[S. F. No. 5475.    Department One.—September 28, 1911.]

## L. E. ABBOTT, Appellant, v. THE 76 LAND AND WATER COMPANY (a Corporation), Respondent.

VENDOR AND VENDEE—BREACH BY VENDOR—ONLY ONE CAUSE OF ACTION ARISES—ELECTION OF REMEDIES—SPECIFIC PERFORMANCE.—A vendee, upon the breach by the vendor of a contract for the sale of land, although he has an election of remedies, acquires but a single cause of action, which must be enforced in a single proceeding. He may bring either an action to recover damages for the breach, or an action for the specific performance of the contract, in which he may obtain not only such remedy, but also such damages as he is entitled to.

ID.—JUDGMENT FOR SPECIFIC PERFORMANCE BAR TO SUBSEQUENT ACTION FOR DAMAGES.—A judgment rendered in favor of the vendee, in an action for the specific performance of the contract, in which no damages for the breach were allowed, is a bar to any subsequent action by him to recover such damages. This result follows from the application of the principle that an entire claim arising either upon contract or from a wrong cannot be divided and made the subject of several suits.

ID.—DAMAGES UNKNOWN AT TIME OF BREACH.—In such a case, it is no warrant for a second action that the vendee may not be able to actually prove in the first action all the items of his demand, or that all the damage may not then have been actually suffered. He is bound to prove in the first action not only such damage as has been actually suffered, but also such prospective damage by reason of the breach as he may be legally entitled to, for the judgment he re-

covers in such action will be a conclusive adjudication as to the total damage on account of the breach.

ID.—BREACH OF CONTRACT NOT A CONTINUOUS BREACH.—The absolute repudiation by the vendor of a contract for the sale of land is a single breach, complete at the time of such repudiation, and a single and entire cause of action at once arises. It is not a continuous breach, giving rise to new causes of action as long as it continues.

ID.—WATER-RIGHTS—DEED RESERVING SUFFICIENT WATER TO FULFILL CONTRACTS.—A deed from a water company conveying its system of water ditches and such right to use the water from a designated source as the grantor "now possesses," and expressly reserving from the operation of the deed "so much of the water now owned by it, or to which it is entitled, as shall be sufficient to enable it to carry out and fulfill any and all contracts for the supply of water which it has hitherto made, and also reserving the right to take from such ditches so much of the water flowing therein as is hereby reserved as shall be necessary to carry out the said contracts and all of them, until all of said contracts be released or in some manner extinguished," and in which deed the grantee covenanted to keep the ditches conveyed to it in such repair as would enable them to perform the service required by such contracts, does not pass the title to such water as the grantor had previously contracted to sell to third persons.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order refusing a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

O. L. Abbott and S. J. Hinds, for Appellant.

L. L. Cory, W. S. Goodfellow, and Goodfellow, Eells & Orrick, for Respondent.

ANGELLOTTI, J.—This is an appeal from a judgment in favor of defendant and from an order denying plaintiff's motion for a new trial, in an action brought to recover $134,-145 with interest.

The second amended complaint stated four alleged causes of action, all of which have been assigned to this plaintiff by the original owners. The first is a sample of all. One O. L. Abbott was, on October 1, 1887, the equitable owner of 320 acres of land, and of "320 inches of water, miner's measurement, incident thereto, constant and permanent flow from the canal of defendant." Defendant held the legal title as

trustee for said Abbott, with the duty resting on it to convey the same to said Abbott on receipt of payment for said property. On said date Abbott offered to pay such price and demanded a conveyance. Defendant denied said right on the part of Abbott until March 4, 1892, when it accepted payment and executed to Abbott a grant deed of said land and water. This deed contained an express covenant that the land and its appurtenant water were free and clear of all encumbrance by the grantor, and also a statement that the deed was executed in compliance with a decree of the superior court of Fresno County given February 21, 1890. On or about July 1, 1890, defendant has sold to the Alta Irrigation District 2680 inches of water, including said 320 inches of water, for four hundred and ten thousand dollars. Abbott has demanded a delivery of said water but defendant has not delivered, or been able to deliver the same to him. On October 1, 1887, the land, with said water incident thereto, was worth sixteen thousand dollars, and Abbott was to pay only forty-eight hundred dollars therefor. Defendant withheld the legal title for the purpose of gaining the difference of $11,200. While defendant withheld the legal title, the property became worth twenty-four thousand dollars. If the legal title had not been so withheld Abbott would have sold said land for its highest market value,—namely, twenty-four thousand dollars. While it was so withheld, the land depreciated in value until at the time of the conveyance it was worth only ninety-six hundred dollars, by reason of all which Abbott was damaged in the sum of $14,400. Defendant received from the Alta Irrigation District for Abbott's 320 inches of water $49,953, which it withholds from him to his damage in that amount. No damage other than that heretofore specified is alleged. It is to be observed that no claim was made that there was any damage arising from withholding the use and possession of the land and the appurtenant water-right. The allegations of the complaint are consistent with the theory that Abbott was in possession of the land at the commencement of the action and at all times thereafter and the court expressly found that at the commencement of the action Abbott was in actual possession of such land and the appurtenant water-right. The second cause of action was one on behalf of S. B. Abbott, the third on behalf of Tom Tyner and the fourth on behalf of

John H. Shipe, all being substantially the same as that on behalf of O. L. Abbott.

The allegations of facts showing damage by reason of the retention of the legal title to the land were denied by the answer, as also were the allegations as to a sale to the Alta Irrigation District of the water incident to such land, and the allegations as to any demand for the water and inability and refusal on the part of defendant to furnish the same. That defendant withheld said title for the purpose of gaining the difference of $11,200 was also denied.

It was further alleged as a special defense to each cause of action, that long prior to the commencement of this action, the plaintiff's assignor commenced and prosecuted to final judgment on the merits, an action against defendant in which action all matters relating to the alleged depreciation and other matters set forth in the complaint in this action could and should have been litigated. ·

In relation to the claim of plaintiff's assignor as to the land the trial court found as to each cause of action as follows:—

Such assignor entered into possession of the land in the year 1885 under a written lease given by defendant, for the term of one year from October 1, 1885. By this lease it was provided that the lessee should have the privilege of purchasing the demised premises at any time before October 1, 1886, at a specified price. On or about October 1, 1886, the claimant accepted a new lease for one year commencing on said date, but such lease contained no provision authorizing the lessee to purchase the property. In September, 1887, plaintiff's assignor claimed the right under his lease to purchase the land at the price specified in the 1885 lease, and defendant denied such right. Plaintiff's assignor having tendered the price so specified and made his demand for a deed, and such demand being refused, an action for the specific performance of the alleged contract of purchase and sale was commenced by plaintiff's assignor against the defendant in the year 1889. The facts found negative completely the idea of any bad faith on the part of defendant in withholding the legal title. In February, 1890, a judgment was given by the superior court in such action in favor of plaintiff's assignor, adjudging the existence of the alleged right and directing the execution of a deed upon payment of the specified price before a specified

date, October 1, 1890. An appeal was taken by defendant to this court, and in January, 1891, the judgment was affirmed by this court (*Abbott* v. *76 Land & Water Company,* 87 Cal. 323, [25 Pac. 693]). No tender of the specified price having been made by plaintiff's assignor after judgment and prior to October 1, 1890, defendant claimed that his right under such decree had lapsed, and still refused to execute the deed. Thereupon it was cited by the superior court for contempt and adjudged guilty thereof. A proceeding in *certiorari* was then instituted in this court to review the action of the superior court in such contempt matter, and in February, 1892, judgment was given affirming the order of the superior court (*76 Land & Water Co.* v. *Superior Court,* 93 Cal. 139, [28 Pac. 813]), and on March 4, 1892, as already stated, defendant complied with such decree by executing its deed. (The alleged depreciation in value in the land occurred subsequent to the commencement of the action, and, as we understand, subsequent to the rendition of judgment by the superior court in the specific performance action.) At the time of the original breach of its contract to sell by defendant, no damages were sustained by plaintiff's assignor, and he then elected to avail himself of the remedy by specific performance, and not to avail himself of an action at law to recover damages for such breach. It was further found that such delay as occurred between the time of such breach and the execution of the deed was caused by this litigation, and the necessary delay of the courts in adjudicating the rights of the parties.

In relation to the claim of plaintiff's assignor as to the water, the court found as follows:—

The water-right was appurtenant to the land, and had no separate existence therefrom. Plaintiff's assignor was in the actual possession of the land, with the appurtenant water-right at the time of the commencement of the action. In the sale and conveyance by defendant to the Alta Irrigation District, there was an exception or reservation of all water belonging to plaintiff's assignor. At all times, plaintiff's assignor was able to take and receive all water required by him in connection with said land, and defendant has never been unable to deliver the same to him.

As to both land and water the court found that no damage was sustained. Also that, if any damage was sustained, the

same was caused by the delay of litigation and was also in its nature remote and speculative damage not otherwise recoverable at law.

It was further found that the land with its appurtenant water-right became the property of the Sacramento Bank, a corporation, by sale under a trust-deed given to secure a loan.

So far as the land was concerned, it cannot be disputed that the findings above referred to are fully sustained by the evidence. In view of the facts thus shown, we know of no rule of law that authorizes a recovery in this action of the damage alleged in regard thereto. Certainly no authority has been cited by plaintiff that would sustain such a recovery. The sole cause of the damages alleged was defendant's breach of its contract to sell the land to plaintiff's assignor. The breach occurred in the year 1887, and was, as said by counsel for defendant, "a total breach and repudiation of the contract." The defendant claimed in good faith and with apparently much ground for its claim, that the contract relied on by plaintiff's assignor did not entitle him to purchase the land. Be this as it may, the contract, so far as it related to the matter of the sale of the land, was single and entire. The total abandonment or breach thereof by defendant gave plaintiff's assignor but a single cause of action, and this single cause of action could not be so split as to afford warrant for two or more actions. It is true that the vendee had an election of remedies. He might have brought an action to recover such damages as were caused him by the breach, or he might, as he did, bring his action for specific enforcement of the contract, and in such action obtain not only the specific enforcement of his contract, but also such damages as he was lawfully entitled to, for it is thoroughly settled that a court of equity taking jurisdiction for the purpose of specifically enforcing a contract takes full jurisdiction of all the rights of the parties, whether legal or equitable, and may award such legal damages as the vendee may have suffered by reason of the delay in performance. (See 2 Warvelle on Vendors, sec. 958; 36 Cyc. 753.) But, under elementary principles, he was bound to obtain all his relief on account of the breach in one action, and could not recover part in one and part in another. If he had brought his action at law for damages, thereby treating the contract as at an end, a judgment therein award-

ing him damages would have been conclusive on him as to the amount of damages sustained by reason* of the breach, and a bar to any action for further damage on account thereof. Resorting as he did to an action in equity to compel specific performance of the contract, instead of an action at law for damages, the decree in his favor of the court having the power to give him all relief that he was entitled to on account of the breach is likewise conclusive and a bar to any subsequent action for relief based on the same contract. This is the necessary result of the application of the well settled principle that an entire claim arising either upon a contract or from a wrong cannot be divided and made the subject of several suits. In such a case it is no warrant for a second action that the party may not be able to actually prove in the first action all the items of the demand, or that all the damage may not then have been actually suffered. He is bound to prove in the first action not only such damage as has been actually suffered, but also such prospective damage by reason of the breach as he may be legally entitled to, for the judgment he recovers in such action will be a conclusive adjudication as to the total damage on account of the breach. (See generally on this subject 1 Sutherland on Damages, 3d ed., secs. 106, 108, 112, 113, 120.)

Appellant's claim for a contrary rule in this case must necessarily be that defendant's breach was what is known in the law as a continuous breach, continuing from the first repudiation of the contract to the day of the execution of the deed and giving rise to new causes of action as long as it continues. Of course, in such a case a judgment for damages accruing prior to the commencement of the action is not a bar to an action for damages accruing subsequently, for the claim for such damages is a new cause of action. This is recognized by section 1047 of the Code of Civil Procedure, but the rule there stated has no application to actions for additional damages on account of some particular breach involved in a former action. (See note to sec. 106 of Sutherland on Damages.) But a continuous breach necessarily implies a continuous duty, such as the duty imposed by a stipulation to keep certain premises in repair during a specified term. There can be no such thing in the case of the absolute repudiation by the vendor of a contract for the sale of real estate. In the latter

case there is a single breach, complete at the time of such re-
pudiation, and a single and entire cause of action at once ac-
crues.   And it is especially true in such a case that a decree
of specific performance of the contract of sale is a bar to any
further relief based on the claim of the breach, for, as we have
said, an action for specific performance necessarily involves
not only the question of such performance, but also all claims
for compensation and damage on account of the delay in per-
formance.

In the case of *Warner* v. *Bacon,* 8 Gray, 397, [69 Am. Dec.
253], which is practically the only case relied on by appellant,
the first action was not one for specific performance, but an
action at law for damages for the withholding of a deed to
which the plaintiff was entitled under a contract of exchange.
The plaintiff was allowed to maintain a second action for
damages accruing after the commencement of the first action
for a continued withholding of such deed from that time to
the date when the deed was executed.   The court did not
appear to deny that where a contract is entirely broken and
repudiated there is but a single breach and a single cause
of action, but taking the case as one in which it appeared
that the agreement had "hitherto been treated by both parties
as an open and continuing agreement," held that the facts
showed "only a temporary withholding of the plaintiff's
rights," for which damages could be recovered in any action
only to the time of the action commenced, and that as to dam-
ages subsequently accruing by reason of a continuance of the
withholding, a new cause of action existed.   Whether this de-
cision was correct or not is unimportant here, in view of the
fact that an action for specific performance of a contract for
the sale of lands involves the adjustment of all matters in dis-
pute relating to such contract, including claims for compensa-
tion and damages for delay in the performance adjudged up
to the very date of such performance.   But the decision can-
not be taken as warranting a conclusion that, upon such facts
as appear in this case, there was anything other than a single
and entire breach, complete at the time of the commencement
of the action for specific performance, on account of which
only one action could be maintained.

In *Fish* v. *Folley,* 6 Hill, (N. Y.) 54, it was held, in accord
with the rule we have discussed, that, where the defendant

had covenanted that plaintiff should have a continual supply of water for his mill from a dam, and subsequently totally failed to perform for nine years, and plaintiff brought an action for the breach and recovered damages sustained by him to that time, the judgment was a bar to a second action arising from subsequent failure to perform, on the theory that although the covenant was a continuing one in one sense, it was an entire contract, and a total breach put an end to it and gave plaintiff the right to sue for an equivalent in damages.

In accord with the views we have stated it has been held that the continued withholding of stocks or bonds after the bringing of action to enforce their delivery, pending the litigation and up to the time of the enforcement of the decree, is not a new wrong redressible by a new action, but is simply a continuation of the original wrong for which the only redress given by the law must be had in the original action, and that, consequently, a second action would not lie for the damage due to depreciation in the value of the stocks or bonds occurring between the time of the commencement of the first action and the determination of such action on appeal. (See *Bracken* v. *Atlantic Trust Co.*, 167 N. Y. 510, [82 Am. St. Rep. 731, 60 N. E. 772]; *Commerce Exchange Nat. Bank* v. *Blye*, 123 N. Y. 132, [25 N. E. 208].) In the case last cited the court said: "The complaint discloses a single tort, which has formed the subject of an action, and been redressed by a judgment therein. It alleges no new or separate demand, but simply a continuance of the refusal to obey it, after judgment and pending the appeals therefrom. If the defendant's continued possession during that interval was a wrong at all, it was not new or separate, but a continuance of that sued upon, and dependent upon the demand proved in that action. At the most, the complaint shows an extension of the damages beyond the date of the trial judgment, and growing out of the delay inseparable from the defendant's right of appeal, and so we are required to say, if we affirm this judgment, either that the damages flowing from a single wrong may be divided into two parts, and each part form the subject of a separate action, or that the exercise by the defendant of the right of appeal upon the precise terms and conditions dictated by the law constitutes a new and illegal detention of the property in controversy. The first proposition is, of course, inadmissible,

and the judgment must stand, if at all, upon the second, and that necessarily involves a conclusion that the appeals taken, by reason of the delay which they occasioned, constituted a new detention and a new wrong for which a separate action could be maintained. Neither reason nor authority justify that conclusion."

That a decree of specific performance of a contract for the conveyance of real estate is a bar to any subsequent action by the vendee for damages on account of the breach of such contract is held in *Head* v. *Meloney,* 111 Pa. St. 99, [2 Atl. 195], and *Thompson* v. *Myrick,* 24 Minn. 4. In the Pennsylvania case it is said, among other things, that, as is plain, the suit for the specific performance was "an action upon the contract in its entirety," and it was substantially held that the decree in such a case must be taken as a complete and final adjudication of the rights of the parties growing out of said contract.

From what we have said it is manifest, we think, as was found by the trial court, that, so far as the land is concerned, all the rights and remedies of plaintiff's assignors here sought to be enforced were merged in and exhausted by the specific performance action.

In regard to the water, plaintiff's only claim was for the proceeds of the alleged sale by defendant to the Alta Irrigation District, during the pendency of the specific performance action, of the water belonging to his assignors.

In regard to the water, in addition to the facts already specified, the trial court found that in the sale and conveyance to the Alta Irrigation District there was not included any of the waters or water-rights claimed by any of such assignors, and that defendant did not sell to such district any water or water-rights to which plaintiff's assignors were entitled, or receive from such district any money for any water subject to said contract. It further found that at the time of the commencement of each of the specific performance actions except that of S. B. Abbott (involving eighty acres and eighty inches of water) a notice of *lis pendens* was duly filed. This finding as to the filing of *lis pendens* is not attacked. It is manifest, as said by respondent, that, in view of this finding, no sale made pending the action could prejudice or affect the rights of any of plaintiff's assignors except S. B. Abbott, to obtain the land and water.

But we think that the court was correct in its conclusion that the sale to the district was expressly made subject to the contracts of plaintiff's assignors, and that all their rights under their contracts were expressly reserved and excepted from the effect of the conveyance. The conveyance was for the express consideration of four hundred and ten thousand dollars represented by bonds of the district, and conveyed the system of water ditches owned by it, "and such right to use the water of Kings River in said ditches as said party of the first part now possesses." It provided further: "There is also saved and reserved from the operation and effect of this conveyance so much of the water now owned by the party of the first part, or to which it is entitled, as shall be sufficient to enable the party of the first part thereto to carry out and fulfill any and all contracts for the supply of water which it has hitherto made with any person or persons, corporation or corporations, . . . and there is also saved and reserved from the operation and effect of this conveyance the right to take from said canals and ditches so much of the water flowing therein as is hereby reserved as shall be necessary to carry out the said contracts and all of them, until all of said contracts be released or in some manner extinguished." The grantee also covenanted that it would keep the canals and ditches conveyed to it in such repair as would enable them to perform the service required by said contracts. Manifestly the intent of these provisions was to except from the effect of the conveyance so much of the water and water-rights as was necessary to enable the grantor to comply with any and all valid contracts theretofore made by it involving the furnishing of water, and the imposition upon the grantee of the burden of maintaining the ditches in such condition that the rights of the parties under such contracts would not be impaired. If this be so, there was no transfer of any of the water or water-rights belonging to any of plaintiff's assignors, and none of the consideration received by the defendant from the Alta Irrigation District can be considered proceeds of the sale of property belonging to any of such assignors. The findings of the court on this branch of the case are amply sustained by the evidence.

No other damage in regard to the water or water-rights was alleged, plaintiff seeking simply the proceeds of the alleged sale of the water of his assignors.

It is claimed that the court failed to find on certain issues, but an examination of the objections in this behalf shows that where there was any such failure, the issue was immaterial in view of our conclusions upon the matters discussed in this opinion.

We find no other matter requiring discussion.

The judgment and order denying a new trial are affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.