[Civ. No. 3128. Third Appellate District.—December 28, 1926.]

LISLE L. SMITH et al., Respondents v. GEORGE SCHRADER et al., Appellants.

[1] VENDOR AND VENDEE — SALE OF REAL PROPERTY — SPECIFIC PERFORMANCE—CONDITIONS—EVIDENCE.—In this action by the purchasers to compel specific performance of a contract to convey certain lots, the fact that the purchasers' instructions to the escrow-holder varied from the contract in specifying that one lot was to be released from a mortgage on payment at any time before a specified date instead of on that date, and that one note was given for the aggregate sum due instead of a number of notes for fractions of it payable in successive years, did not justify the vendor's refusal to perform, where the purchasers were ready and willing to comply with the contract, irrespective of the proposed variations, and the alleged variations did not impose any onerous or burdensome conditions upon the vendor.

[2] ID.—CONSIDERATION—EVIDENCE.—In such action, the fact that the vendor, after refusing to comply with the terms of his agreement of sale, sold the property to a third party for a sum less than the sum agreed to be paid by plaintiffs, sufficiently answers the requirement of the law that the evidence must show, before specific performance will be awarded, that the amount agreed to be paid by plaintiffs was fair, just, and equitable.

[3] ID.—BREACH BY VENDOR—DAMAGES—RENT OF OTHER PROPERTY. In such action, the trial court erred in allowing plaintiffs as damages the amount of increased rent paid by them for other premises after the refusal by the vendor to perform his contract, such allowance not being based upon the rents, issues, and profits of the premises to be sold by the vendor.

[4] ID. — ERROR BASED ON FAILURE OF COURT TO ADOPT CORRECT MEASURE OF DAMAGES—APPEAL.—In such action, the rule that error cannot be predicated upon the failure of the court to adopt the correct measure of damages, where the case has been tried upon the theory that a particular rule of damages was applicable to the issues tendered in the trial court, does not apply, where the measure of damages adopted by the trial court was not acceded to by defendants but was controverted by them during the trial.

[5] ID. — MONEY DEPOSITED IN ESCROW — INTEREST — DAMAGES.—In such action, the trial court properly allowed, as an element of damages, interest on a sum of money deposited in escrow by plaintiffs.

(1) 39 **Cyc.**, p. 1542, n. 96.   (2) 36 **Cyc.**, p. 784, n. 15 New.   (3) 36 **Cyc.**, p. 753, n. 19, p. 754, n. 23, p. 755, n. 26, 27, 28 New. (4) 3 **C. J.**, p. 737, n. 59.   (5) 36 **Cyc.**, p. 754, n. 23.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul Burks, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Haas & Dunnigan for Appellants.

Joseph Musgrove and Fred O. McGirr for Respondents.

PLUMMER, J.—Action to compel specific performance of a contract to convey real estate. Plaintiffs had judgment and the defendants appeal.

The transcript shows that on the nineteenth day of January, 1923, the plaintiffs and defendants, other than the Paul Kent Truck Company, entered into the following agreement, for the sale and purchase of certain lots situate in the city of Los Angeles:

3.   See 27 **R. C. L.** 631, 636.

"This agreement, made this 19th day of January, 1923, at the city of Los Angeles, by and between George Schrader, hereinafter called the vendor, and Lisle L. Smith and Stoughton Smith, hereinafter called the vendees, witnesseth:

"That the said vendor agrees to sell and the vendee agrees to buy the following described real estate situate in the city of Los Angeles, county of Los Angeles, state of California, and known as lots 164, 166, 188, 187, 186 and 185 of the Wingerter Tracts, for the sum of thirty-two thousand dollars ($32,000), to be paid in the manner following:

"Five thousand dollars to be deposited with the Title Insurance & Trust Company upon the placing of the deal in escrow;

"Three thousand dollars two years thereafter (should, however, the said vendees pay five thousand dollars in lieu of said three thousand dollars at said time, the said vendor will release said above lot No. 188);

"And the sum of three thousand dollars each year thereafter, together with interest at the rate of six per cent on all deferred payments, said obligations to be evidenced by promissory notes bearing six per cent interest and secured by mortgage upon the premises to be conveyed; interest to be paid quarterly;

"And the said George Schrader agrees upon this transaction being placed in escrow to serve written notice upon the tenant now in possession of said premises, to vacate the same within ninety days, according to provisions of certain lease under which said tenant now holds the said premises.

"This agreement to be binding upon the heirs and executors of the parties hereto.

"Dated this day and year first above written.

"GEO. SCHRADER.

"LISLE L. SMITH.

"STOUGHTON SMITH."

On the same day the defendant George Schrader executed and delivered to the Title Insurance & Trust Company, the escrowee named in the forgoing agreement, a memorandum of instructions, the part material to be considered herein being as follows:

"As a part of the consideration for said deed, you will also procure note executed by above vestees and Abbie M. Smith

& Eleanor A. Smith, their wives, in favor of George Schrader, for $27,000.00 due in annual install. of $3000.00 each, due in 2, 3, 4, 5, 6, 7, 8, 9, 10 yrs. after 1/25/23 with int. at 6% per annum from 1/25/23, payable at Los Angeles, Calif., payable quarterly (*See special privilege below*) secured by a mortgage your form on said premises which by your guarantee shall 'Privilege reserved in mortgage of paying $5000.00 to apply on principal at any time prior to 1/25/25 by paying accrued interest to date of such payment.' In the event this option is exercised lot 188 is to be released from the mortgage at time of such payment."

At the same time the plaintiffs executed and delivered to the Title Insurance & Trust Company a like memorandum of instructions, the material part of which necessary to be considered herein is as follows:

"Los Angeles, Cal., Jan. 19, 1923.

"Title Insurance and Trust Company:

"I hand you herewith check for $5000.00 and will hand you funds sufficient to cover my portion of your charges together with note and mortgage for $27,000.00 as set out below; all of which you are authorized to use in connection with your order No. 643902 when you can issue, in your usual form, your Cont. Guarantee of T. G. & Tr. Co. or L. A. T. I. Co.'s (with your liability thereunder not to exceed $32,000.00) on lots 164–166–185–186–187–188 of Wingerter Tract, City and Co. of Los Angeles, California at 15/52 M. R. which will show record title to said property vested in Lisle L. Smith and Stoughton F. Smith, both married men, free from incumbrances, except . . . and a mortgage your form, executed by vestees and wives in favor of George Schrader for $27,000.00, due in annual installments of $3,000.00 each in 2–3–4–5–6–7–8–9–10 yrs. after 1/25/1923, with int. at 6% per annum from 1/25/23 payable quarterly at Los Angeles, Calif. Privilege reserved of paying $5000.00 of the principal at any time prior to 1/25/25 by paying accrued interest to date of such payment without bonus. In the event this option is exercised lot 188 of the above tract is to be released from the mortgage."

These memoranda of instructions contained much detailed matter not involved in this action and therefore need not be set forth herein. After the execution of the agreement of sale and

purchase and memoranda of instructions, as set forth herein, it appears that the defendant George Schrader noticed that there had been some slight variations between the memoranda of instructions and the agreement of purchase and sale, and thereupon, on the twenty-fourth day of January, 1923, the following letter was sent by the defendant George Schrader to the Title Insurance & Trust Company, and, also, to the plaintiffs in this action:

"Los Angeles, Cal., January 24th, 1923.

"To the Title Insurance & Trust Company, Messrs. Lisle L. Smith and Stoughton F. Smith and Bernard Meidenberg.

"Gentlemen: I hereby notify you that the escrow instructions in Escrow No. 195057 (Order No. 643,902), the terms for the sale of lots 164, 166, 185, 187 and 188 of the Wingerter Tract were deviated from in the following two particulars:

"The time at which the option for a release of lot 188 from mortgage was to be exercised should be at the maturity of the first note, which would be two years after the 19th day of January, 1923;

"And furthermore said agreement of sale provided for separate notes of three thousand dollars each, due in two, three, four, five, six, seven, eight, and nine and ten years;

"And further in accordance with the agreement between the parties the note maturing in two years from date of said agreement shall contain a clause in pursuance with said agreement specifying that should the mortgagors at the time of maturity of said note desire the release of lot No. 188 from the operation of the mortgage the said mortgagors shall pay the sum of five thousand dollars in lieu of said sum of three thousand dollars, and that

"Further the provisions and conditions of the mortgage shall be made in conformity with said provisions of said note maturing two years from date of the agreement.

"Kindly notify me that you have complied with this request to make the aforesaid corrections on or before January 31st, 1923, and oblige,

"Yours respectfully,

"George Schrader."

Thereafter, and on the second day of February, 1923, the defendant wrote an additional letter to the plaintiffs in this

action, notifying the plaintiffs that he refused to comply with the agreement of sale entered into, as herein stated. This letter is as follows:

"Gentlemen:

"On January 24th, 1923, I mailed you and each of you a notice in writing containing a request that escrow instructions in Escrow No. 195,057 (Order No. 643,902) be modified to correspond to the original contract entered into for the sale of lots 164, 166, 185, 186, 187 and 188 of the Wingerter Tract, and requested you to notify me on or before the 31st day of January, 1923, that you had complied with said request.

"Not having received any such notice from you, you are hereby notified that I refuse to go on with said sale, and that the same is hereby terminated.

"Yours respectfully,
"GEORGE SCHRADER."

Immediately upon receipt of this letter the attorneys for the plaintiffs notified the defendant Schrader to the effect that the plaintiffs had until the nineteenth day of February, 1923, within which to close the proposed deal, and were ready and willing to comply with all the conditions of the agreement of sale. This letter is as follows:

"February 5, 1923.

"Mr. George Schrader, 18 Mar Vista Street, Pasadena, Cal.

"Dear Sir: I am the attorney for L. L. Smith and S. F. Smith, who are purchasing certain real property from you in the Wingerter Tract, consisting of lots 164–66, 185–6–7 and 8.

"They have heretofore entered into a written agreement concerning this property, and also escrow instructions. They received a notice from you dated the 2nd of February, 1923, in which you notify them of your refusal to go on with this sale, and notify them of your intention to terminate the sale.

"Both Mr. Smiths insist on carrying out the terms of this sale, and performing the obligations on their part to be performed, and according to their contract with you, and are ready, able and willing to perform each and every thing upon their part to be done or performed to carry out this contract.

"The escrow instructions, so I am informed, provide for thirty days from the 19th of January, 1923, within which to close this deal, therefore this deal must be closed before the 19th of this month, and I therefore desire to ascertain from you if it is your intention to refuse to abide by this contract, which you have with Mr. Smith, and if you refuse to deliver the property according to the agreement. If so, I have no other alternative but to immediately institute suit to compel the performance. I trust you will notify me by return mail so there will (be) no unnecessary delay.

"I have discussed the matter several times with Mr. Weyse and made several propositions to arrive at an amicable adjustment of the matter, but he informs me same cannot be done as you insist on terminating this contract. Both Mr. Smiths went to the office of Mr. Weyse today hoping to meet you there and discuss the settlement of your differences, and to ascertain if some amicable adjustment could not be arrived at, but you refused to be present. It is my understanding from what my clients inform me Mr. Weyse informed them you refuse to go on with the deal.

"I therefore wish to ascertain if this is the position you take and if there is no possibility of closing the transaction, as I will have no other alternative but to institute an action at law.

"Trusting to hear from you by return mail, I am,

"Yours truly."

On February 9, 1923, the defendant Schrader sold the premises in controversy to the defendant Paul Kent Truck Company for a consideration of $31,000. The plaintiffs, as stated, had judgment for specific performance of the contract and judgment in damages for the sum of $210 per month from the nineteenth day of February, 1923, on account of the alleged increase in the rent upon the premises then occupied by the plaintiffs, being premises other than those involved in this action.

The record shows that the plaintiffs and the defendant Paul Kent Truck Company, a corporation, were engaged in the motor transportation business; that prior to the time of the execution of the agreement of sale herein mentioned the plaintiffs occupied certain premises under a lease which expired on December 31, 1922; that the plaintiffs desired to purchase suitable property for the location of their business

and the erection of a warehouse thereon; that the Schrader property was especially adapted or suitable for such purposes; that on January 19, 1923, the plaintiffs and the defendant Schrader met in the office of a Mr. Weyse, an attorney representing Mr. Schrader, for the purpose of entering into an agreement for the purchase and sale of the property. Mr. Schrader's agent, Mr. Meidenberg, was also present. It further appears that the agreement of purchase and sale was then prepared, read and signed; that the parties, including the attorney for Mr. Schrader, and his agent, Mr. Meidenberg, went to the office of the Title Insurance & Trust Company for the purpose of placing the transaction in escrow and having escrow instructions prepared and signed by them; that the escrow memoranda herein referred to were then and there drawn, read over to the parties and, also, to the defendant Schrader and his attorney, and were signed by the parties to the contract. It does not appear that the plaintiffs were represented by any attorney during these transactions. Immediately upon the signing of the escrow instructions, plaintiffs signed and delivered to the Title Insurance & Trust Company their check for $5,000, made payable to the company, as provided in the contract.

Immediately thereafter the defendant Schrader served a written notice upon the defendant Paul Kent Truck Company, the tenant, which was then in possession of the premises in controversy, to vacate the same within ninety days thereafter, which notice informed the defendant Paul Kent Truck Company of the agreement of sale made with the plaintiffs, and that the property had been sold to plaintiffs for $32,000, of which the defendant Schrader was to receive the net sum of $30,000. At that time the defendant Schrader also notified Mr. Paul Kent of the Paul Kent Truck Company, that there were six lots included in the deal. Mr. Kent replied that if he had known that there were six lots instead of five he would have purchased the property himself. In a few days thereafter the defendant Paul Kent Truck Company offered the defendant Schrader $31,000 for the property. On the next day, February 2, 1923, the defendant Schrader withdrew the notice to vacate. On the twenty-third day of January, 1923, the defendant Schrader obtained from the Title Insurance & Trust Company copies of the escrow instructions, with a copy of the contract of sale

herein set forth, and took the same to the office of Mr. Shipman, the attorney for the Paul Kent Truck Company, and on January 24, 1923, the defendant Schrader, together with Mr. Shipman, went to the office of Mr. Weyse, attorney for defendant Schrader, and then and there a letter was prepared and signed by Mr. Schrader and mailed to the Title Insurance & Trust Company, stating, in substance, that the escrow instructions deviated from the terms of the sale in two particulars, to wit: That the time for which the option for the release of lot No. 188 from the mortgage was to be exercised should be at the maturity of the first note and that the agreement provided for separate notes of $3,000 each; that the note maturing in two years from date should contain a clause specifying that should the mortgagors at the time of maturity of the note desire the release of lot No. 188 from the operation of the mortgage, the said mortgagors should pay the sum of $5,000 in lieu of $3,000. Some further negotiations took place, from which it appears that the plaintiffs were ready and willing to comply with the terms of the contract just as written, irrespective of the alleged variations in the memoranda of instructions given by the respective parties to the Title Insurance Company.

[1] One contention made by the appellant that the court erred in allowing judgment for specific performance is that the variation in the terms of the escrow instructions relative to the $5,000 being paid at any time prior to January 25, 1925, or as it is written in the memorandum, "1/25/25," instead of being paid at the maturity of the first note, which would be, as stated in the Schrader memorandum, on the twenty-fifth day of January, 1925, and the further variation in the plaintiff's memorandum to the extent that there was only to be one note, whereas there were to be a number of notes in the sum of $3,000 each, equal to the sum remaining due, payable 2, 3, 4, 5, 6, 7, 8, 9, and 10 years after date, bearing interest at six per cent per annum. There was no difference in the amount nor in the annual installments, nor in the interest to be paid, the only variation being in this particular, that the agreement called for notes and the memoranda of instructions called for the execution of a note, and the amount remaining due was to be secured by mortgage. This variation, it is argued by appellants, imposed onerous conditions upon the defendant Schrader, contrary to

their agreement of sale and of such a nature as to entitle the defendant Schrader to refuse to comply with the terms of the agreement. However, the record shows that shortly after this variation had been discovered, the plaintiffs, in writing, stated that they were ready and willing to comply with the terms of the written agreement, irrespective of the variation therefrom contained in the memoranda of instructions. Irrespective of this, we do not very well see how the alleged variation imposed any onerous or burdensome conditions upon the defendant Schrader. The amount of money agreed to be paid was exactly the same, in all the installments the amount of the deferred payments were the same, the amount of the installments was the same, and the rate of interest was not changed. As to the installments, it appears from the agreement that they were to be evidenced by a number of notes. In the memoranda of instructions, the installments were to be evidenced by one note, or a note for the aggregate sum remaining due, payable in installments. The record is absolutely silent as to how the alleged variation between the agreement of sale and the memoranda of instructions delivered to the Title Insurance & Trust Company occurred. There is not a scintilla of evidence that either party intended to deceive or mislead the other, or showing in any way whatever that either party desired or was attempting to vary the terms of sale. The only burden imposed upon the seller, under the memoranda of instructions, would be the duty of accepting payment of $5,000 earlier than called for in the agreement. It does not appear that either of the parties intended by the memoranda of instructions delivered to the escrowee to vary the terms of the agreement of sale, and in view of the fact of the plaintiffs' readiness and willingness to comply with the terms of sale as mentioned in the argument, we think the trial court was justified in concluding that the defendant Schrader had no grounds upon which to attempt cancellation of the agreement of sale and to refuse to comply with the conditions therein upon the defendants' part imposed.

[2] It further appears that after refusing to comply with the terms of his agreement of sale entered into with the plaintiffs, the property was sold to the defendant Paul Kent Truck Company, a corporation, for the sum of $31,000, or $1,000 less than the sum agreed to be paid by the plaintiffs,

which answers the requirement of the law, we think, that the evidence must show, before specific performance will be awarded, that the amount agreed to be paid is fair, just, and equitable.

[3] The second ground for reversal which is necessary to be considered herein and which we find meritorious is that in relation to the damages awarded by the trial court. It appears in the transcript, and from the facts which we have gleaned therefrom and stated herein, that the plaintiffs were occupying premises not involved in this action, their lease to which had expired on the thirty-first day of December, 1922, and that after the failure of the defendant Schrader, in this action, to comply with the agreement of sale, the rent on the premises then and there occupied by the plaintiffs was increased in the sum of $210 per month. It is this increase in the rental value of the premises occupied by the plaintiffs that, as set forth in plaintiffs' complaint, is the foundation for their claim to damages in said sum, and it is upon this basis that the trial court made its findings and judgment awarding the plaintiffs damages in the sum of $210 per month, in addition to interest on the $5,000 deposit by the plaintiffs with the Title Insurance & Trust Company as the first payment of the purchase price of the premises agreed to be sold by the defendant Schrader to the plaintiffs. The facts recited above show that the plaintiffs had permitted their lease to expire on the premises occupied by them some little time before the execution of the agreement of purchase and sale set forth herein, and, therefore, any allegations that plaintiffs were left without a lease on the premises occupied by them, by reason of the defendants' failure to comply with the agreement of sale, is controverted by their own testimony that the lease had been allowed to expire prior to the execution of the agreement. The complaint is silent as to the rental value of the premises involved in this action. The only reference thereto is found in the testimony of Paul H. Kent to the effect that his company was paying the sum of $85 per month therefor. The findings of the court make no mention of the rental value of the premises involved in this action. The appellants base their appeal upon the provisions of section 3306 and 3334 of the Code of Civil Procedure, and argue that said sections fix and limit the damages, recoverable, if at all, by the

plaintiffs in this action. This contention, however, does not appear to be borne out by the authorities. On the other hand, the respondents, apparently, take the position that all damages, whether remote or proximate, suffered by the plaintiffs, whether within the reasonable contemplation of the parties or connected with the property involved, may be recoverable, as well as a decree for specific performance in this form of action. This contention appears to be based upon the following excerpt found in the opinion, in the case of *Abbott* v. *The 76 Land & Water Co.*, 161 Cal. 42 [118 Pac. 425], to wit: "It is true that the vendee had an election of remedies. He might have brought an action to recover such damages as were caused by the breach, or he might, as he did, bring his action for specific enforcement of the contract, and in such action obtain not only the specific enforcement of his contract, but also such damages as he was lawfully entitled to, for it is thoroughly settled that a court of equity taking jurisdiction for the purpose of specifically enforcing a contract takes full jurisdiction of all the rights of the parties, whether legal or equitable, and may award such legal damages as the vendee may have suffered by reason of the delay in performance. (See 2 Warvelle on Vendors, sec. 958; 36 Cyc. 753.)" A careful reading of this statement of the law relied upon by respondents discloses that the award can be only of such legal damages as the vendee may have suffered by reason of the delay of the vendor. The text found in Cyc., upon which this language of the supreme court rests, defines the legal damages as follows: "A vendor retaining, or wrongfully regaining, possession, after the time appointed for delivery of possession, is chargeable with the rents and profits, or with the fair rental value of the premises." (36 Cyc. 755.) "Where there is delay in completion of the contract, compensation may be made to one or the other of the parties by means of the rents and profits, and interest on the price. The general rule is to adjust the rights of the parties so as to give to each as nearly as possible what he would have received if the contract had been performed according to its terms. . . . The vendee is discharged from the duty of paying interest by a tender of the purchase-money when it became due and a continued readiness to pay it since, or by depositing it in a bank, with notice to the vendor, subject

to his order, to be delivered to him on the execution and delivery of a deed." A number of authorities are cited on pages 754 and 755 of 36 Cyc., setting forth the measure of damages. In *Harper* v. *Battle*, 180 N. C. 375 [20 A. L. R. 357–360, 104 S. E. 658], a case involving the damages to be allowed under certain circumstances, in addition to specific performance, the court said: "On the facts presented, we are of opinion that the judgment should be reformed so as to allow plaintiff for the rents from June 1, 1918, the day when the deed should have been made, and plaintiff charged with interest from that date on the contract price." In *McMahan* v. *McMahan*, 122 S. C. 336 [26 A. L. R. 1295, 115 S. E. 293], in a case for specific performance and damages, where specific performance was not awarded, the court stated the rule as to damages, as follows: "Where a vendor having title refuses to convey, and no part of the consideration has been paid, the measure of damages which the vendee is entitled to recover is the value of the land at the time the contract should have been performed, less the contract price," which conforms very closely to the provisions found in section 3306 of our Civil Code. In *Baker* v. *Puffer*, 299 Ill. 486 [132 N. E. 429], the direct question which we are here considering was passed upon by the supreme court of the state of Illinois, and it was there held that the plaintiff was not entitled in a court of equity to damages for rent paid for other premises that he might occupy or had occupied by reason of the refusal of the defendants to perform their contract. In 27 R. C. L. 631 (sec. 388), the rule as to the measure of damages is thus stated: "Under any of the different rules of damages, the purchaser is entitled at least to recover nominal damages for a breach by the vendor. The rule is laid down in many cases that the purchaser is entitled, as general damages for the refusal or inability of the vendor to convey, to recover the difference between the actual value of the land and the agreed price, together with any payments he may have made, or the value of the land deducting the amount of the purchase money unpaid. These statements are substantially the same in effect and result in giving the purchaser as damages the benefit of his bargain in case the land is worth more than the price agreed upon." And on page 636 of the same volume, section 394, relative to special damages, the law, supported by

authorities there cited, is thus stated as follows: "In addition to general damages the purchaser may be entitled to recover special damages where they are the natural and proximate cause of the vendor's breach of the contract; and where the breach consists in the failure of the vendor to convey at the time· agreed upon and his continued wrongful detention of the possession from the purchaser, a conveyance having been afterward made and accepted, rents received by the vendor during the time the control of the property was so detained have been held to be recoverable. To be recoverable, however, the special damages must be a proximate cause of the vendor's breach of his contract. Thus expenses incurred by a purchaser in preparing to build on other lands owned by him with the use of a building on the land sold, the benefit of which is lost to the purchaser by reason of the failure of the vendor to convey, are too remote to be recoverable."

The general rules which we have stated relative to the measure of damages are supported by practically all the authorities, and must be held to be the legal damages referred to by the supreme court of this state in *Abbott* v. *The 76 Land & Water Co., supra,* recoverable in connection with a decree for specific performance.

[4] The respondents, in reply to the appellants' claim that the court adopted the wrong measure of damages, call our attention to the case of *Durkee* v. *Chino Land & Water Co.,* 151 Cal. 561 [91 Pac. 389], and *Kincaid* v. *Dunn,* 26 Cal. App. 686 [148 Pac. 235], where it is held that error cannot be predicated upon the failure of the court to adopt the correct measure of damages, where the case has been tried upon the theory that a particular rule of damages was applicable to the issues being tendered to the trial court. This position, however, is untenable. A reference to the transcript shows that the right of the plaintiffs to recover damages under the pleadings in this case was all the while controverted by the defendants, as the following colloquy taking place between counsel during the trial abundantly ·shows: Mr. Musgrove, attorney for the plaintiffs, in seeking to introduce certain testimony, stated: "The purpose is to show that Mr. Schrader knew that this property was the only property available, etc. . . . Mr. Haas: That might be material, if your Honor please, in an action for damages where the

question of good faith and bad faith were concerned, but it is immaterial in an action for specific performance. Mr. Musgrove: The theory is that in an action for specific performance—well, we are not asking for damages. We want the property because it is the only property for this particular purpose. Mr. Haas: Well, it is absolutely immaterial what you want it for. The question of good faith or bad faith does not enter into it. Well, I will stipulate that such is a fact, but I will not stipulate that it is material in any way. The Court: Well, it would be material as bearing upon the question as to damages for withholding, wouldn't it? Mr. Haas: Well, those damages for withholding, we will show that they are not entitled to recover those in an action for specific performance. They may be grounds for a separate action, but I am satisfied they are not entitled to recover any damages in an action for specific performance. The Court: If that is the case, what is the danger of going into it for what it is worth? . . . Subject to the objection and ruling, which will be reserved, the facts last stated by Mr. Musgrove are admitted." And further on the question of damages: "Mr. Musgrove: We might have an action for damages. Now, I do not want to be placed in the position, inasmuch as I have already included an action for damages, I do not want to be foreclosed by this action, and if necessary, I will offer proof . . . for the particular needs for which we wanted it. Mr. Haas: You are not entitled to make that proof. The Court: Do you think you would be entitled to make that proof? Mr. Musgrove: Under the pleadings as they now stand; not under the pleadings of the third amended complaint, no. The Court: Was this preliminary to a suggested amendment? Mr. Haas: Well, we will resist that. Having gone into the trial and having asked us to make stipulations which are now in the case, they are not entitled to amend. That is an entirely different line of attack which would mean a different line of preparation. We have a right to rely upon the pleadings as they are at this time."

Upon the question of the increased rent which the plaintiffs allege they paid on property other than that involved in this action, the record shows that the plaintiffs offered to prove by a certain witness that the rent had been increased as alleged and counsel for the defendant stipulated that the

witness would so testify. The stipulation is as follows:
"Mr. Haas: We will stipulate that they will so testify. We
do object to it on the ground it is incompetent, irrelevant
and immaterial, if offered. Your Honor may withhold your
ruling on that until the final argument."

It was also stipulated that Paul Kent was the sole owner
of the stock of Paul Kent Trust Company, with the exception
of qualifying shares.

It is clear from the foregoing that the measure of damages
alleged in the complaint and sought to be established by the
testimony, and which was finally adopted by the court was
opposed by the defendants all during the course of the trial,
and having been so opposed and questioned, the cases dealing
with the measure of damages, accepted by counsel as the true
measure of damages applicable to the case being tried, have
no relevancy, nor when the measure adopted by the court as
the true measure of damages is not acceded to but contro-
verted during the trial by the defendants.

[5] Interest on the $5,000 deposited by the plaintiffs
with the escrowee was properly allowed.

We do not find any merit in the contention of appellants
that the decree awarding specific performance varies from
the agreement of purchase and sale entered into by the
parties. The wording is slightly different, but the effect is
precisely the same. Under such circumstances, it would only
unduly lengthen this opinion to set forth our views in rela-
tion thereto.

It follows from what we have said that the judgment of
the trial court, so far as it relates to damages awarded for in-
creased rents paid by the plaintiffs, must be set aside on the
ground that the damages have been based upon remote and
collateral matters, and not upon anything relative to usable
values, that is, the rents, issues, and profits of the premises
to be sold by the defendant Schrader to the plaintiffs.

No question has been made upon this appeal that if specific
performance should be awarded under the agreement of sale,
it should be awarded as well against the defendant Paul
Kent Truck Company as against the defendant Schrader.
A number of minor objections have been urged upon this
appeal, but not being deemed of sufficient merit to affect the
decision in this cause are not specifically referred to in this
opinion. The judgment of the trial court awarding damages

to the plaintiffs, in so far as it is based upon the alleged increase of rents paid by them for other premises than those involved in this case, is hereby reversed; as to all other parts, the judgment is affirmed, appellants to recover their costs on appeal.

Preston, J., *pro tem.*, and Finch, P. J., concurred.