[L. A. No. 28767. In Bank. July 3, 1968.]

RONALD O. REICHERT, Plaintiff and Appellant, v. GEN-
ERAL INSURANCE COMPANY OF AMERICA et al.,
Defendants and Respondents.

Louis Most for Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, King, Eyherabide, Cooney & Owen, Bolton, Groff & Dunne, Thornton & Taylor, Gene E. Groff, Graham G. Campbell, Edward J. Ruff and Evans M. Taylor for Defendants and Respondents.

SULLIVAN, J.—Plaintiff, Ronald O. Reichert, appeals from a judgment of dismissal entered on an order sustaining defendants' demurrers to plaintiff's second amended complaint without leave to amend.[1]

Plaintiff's original complaint, naming five insurance companies as defendants (see fn. 1, *ante*) and containing a single cause of action, alleged in substance as follows: That on February 1, 1964, plaintiff purchased from defendant American National Insurance Company (American National) "The Bakersfield Inn," a 325-unit motel worth $1,500,000; that said seller took back a first deed of trust to secure $850,000 of the purchase price; that as part of the transaction plaintiff received assignments, presumably from the seller, of four fire

---

[1]Defendants and respondents are four insurance companies: General Insurance Company of America, Industrial Indemnity Company, Insurance Company of North America, and National Union Fire Insurance Company. The action was commenced against said four companies and American National Insurance Company but pursuant to stipulation was dismissed as to the last named company prior to the filing of plaintiff's first amended complaint.

Plaintiff also appeals from "the refusal of the Trial Judge to disqualify himself after Motion by plaintiff under Section 170.4" of the Code of Civil Procedure. Assuming that an order to such effect was made, it is nonappealable (Code Civ. Proc., § 963). Where the facts are not in conflict, prohibition is the proper remedy to test whether or not a judge is disqualified to act. (*Briggs* v. *Superior Court* (1932) 215 Cal. 336, 341-342 [10 P.2d 1003]; see *Chastain* v. *Superior Court* (1936) 14 Cal.App.2d 97, 104 [57 P.2d 982]; *Oak Grove School Dist.* v. *City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 693 [32 Cal.Rptr. 288].) While not appealable, nevertheless such order is reviewable upon appeal from a final judgment. (See *Central Pac. Ry. Co.* v. *Superior Court* (1931) 211 Cal. 706, 714 [296 P. 883]; *Oak Grove School Dist.* v. *City Title Ins. Co.*, *supra*.) We therefore review the order on the appeal from the judgment herein and dismiss the attempted appeal from the order itself.

insurance policies then in effect and issued respectively by the other four defendant insurance companies, thus providing a combined coverage of $1,375,000; that in order to induce plaintiff to purchase the property and the policies, all five defendants represented to plaintiff that they would indemnify him for any damage or loss arising from fire or explosion to the extent of the policy limits; that said defendants further represented that in the event of a loss they would make payment of plaintiff's claims "fairly and with promptness and dispatch"; that on February 19, 1964, a fire caused damage in the amount of $424,000 to the motel; that the loss was covered by the policies of the four defendant insurers but said defendants refused to honor plaintiff's claim of loss, thereby causing plaintiff to lose possession of the motel; that the representations made by defendants in connection with the policies were false and fraudulent, were made pursuant to a conspiracy to defraud plaintiff, and were made with the intention of not performing the promises given to plaintiff; and that all five defendants acted in concert with the intent and purpose of causing plaintiff to lose his equity in the motel. Plaintiff prayed for $1,500,000 actual and $5,000,000 punitive damages. Defendants' demurrers were sustained with leave to amend upon the ground, among others, that plaintiff lacked capacity to sue.

Plaintiff's first amended complaint named as defendants only the four insurers, the action having been dismissed as to American National. It contained eight stated causes of action : four common counts (one against each defendant separately) for money had and received and four causes of action (one against each defendant) for fraudulent failure to adjust the fire loss promptly. The first amended complaint contained no allegations as to fraudulent representation or conspiracy. Again defendants' demurrers were sustained with leave to amend.

Plaintiff's second amended complaint here under review contains nine separately stated causes of action. Except for an insignificant addition of language in one instance, the first eight counts are a word-for-word repetition of the first amended complaint which, as we have said, was vulnerable to demurrer. To these the pleader has added a ninth cause of action against all defendants "for bad faith."

The first four causes of action are common counts against each defendant separately for money had and received. In each instance, the common count, after reciting the corporate status of the particular defendant, alleges that "on or about

February 1, 1964,'' said defendant ''received and collected to the use and benefit of the plaintiff'' a specified sum of money.[2]

In the next four causes of action, after allegations as to the purchase of the motel, the assignment of the insurance policies and the fire loss, plaintiff in separate counts as to each defendant, alleges in words and substance as follows: That although plaintiff did all things necessary, defendants ''did not take steps to adjust and settle the loss and damage'' promptly and without delay and denied plaintiff's claim of indemnity; that ''under the contract of insurance the carrier had the duty and obligation to come forward to the aid of its policyholder for the purpose of settling and adjusting the policyholder's loss fairly, promptly and without delay''; that ''The refusal of the insurance carrier to proceed promptly to adjust and settle plaintiff's loss due to the fire, caused plaintiff to lose possession of the property, and as a result of the failure of the carrier to indemnify plaintiff, plaintiff was adjudicated a bankrupt on July 24, 1964''; that ''the bankruptcy of plaintiff was directly caused by the bad faith conduct on the part of the insurer''; that ''in refusing to come to the aid of its policyholder with promptness and dispatch, the defendant insurance carrier is guilty of oppression and fraud, and the insurance carrier has by its actions wilfully refused to perform its contract''; and that ''as a direct result of the fraud and oppression . . . the plaintiff has been deprived of and caused to lose a property reasonably worth $1,500,000.00, all to his damage in that sum.''

The ninth cause of action against all four defendant companies incorporates by reference the aforesaid allegations of fire, loss and refusal on the part of defendants, and further alleges in words and substance that ''By the terms of the policies,'' defendants agreed to indemnify plaintiff for the loss; that ''defendants impliedly promised and offered to settle and adjust any losses in a prompt and fair manner without unnecessary delay''; that contrary to their ''promises and representations,'' defendants ''did not offer settlement of the loss, nor did they undertake repair of the dam-

---

[2]The trial court in its minutes and in its formal ruling on the demurrers states that the common counts seek ''the return of premiums for the various fire policies which are the basis of causes of action set forth in the fifth, sixth, seventh, eighth and ninth causes of action.'' The allegations of the last five causes of action set forth the amount of the premium for each policy and confirm the above statement.

aged portions of the property insured''; and that ''As the direct and proximate result and failure to exercise the highest degree, or an ordinary degree, of good faith, care, skill, or diligence for the protection of plaintiff's rights, which were entrusted by plaintiff to defendants for protection, and of the defendants' breach of their trust obligations, plaintiff has been damaged in the amount of $1,500,000.00, plus interest.''

We observe preliminarily that the allegations of the ninth cause positing an *implied* contract to adjust the fire loss do not spell out the basis for plaintiff's loss of the motel as precisely as do the allegations of the preceding causes of action positing *express* contracts to adjust the loss. Significant, however, is the fact that in none of the allegations of the various complaints or causes contained therein has plaintiff alleged that the compensatory damages which he seeks are related to anything other than the property which was damaged by the fire. Moreover, the $1,500,000 in alleged compensatory damages is the exact amount that the property is alleged to have been worth. Although the complaint contains allegations of bankruptcy, and that the adjudication thereof was ''caused by the bad faith conduct on the part of the insurer,'' the fact of the bankruptcy, or the filing of the petition therein, is in no way alleged to have *caused* the $1,500,000 loss to plaintiff. According to the allegations, the bankruptcy is not a *cause* of plaintiff's loss, but like the loss is a *result* of defendants' alleged bad faith, oppressive and fraudulent conduct in failing to come to plaintiff's aid as defendants were expressly or impliedly obligated to do.

All four defendants filed general and special demurrers asserting *inter alia,* that the second amended complaint does not, nor does any of its causes of action, state facts sufficient to constitute a cause of action ''in that no cause of action is stated in the plaintiff.'' When the parties appeared to argue the demurrers plaintiff's counsel made an oral motion to disqualify the trial judge under Code of Civil Procedure section 170, subdivision 4.[3] Counsel stated, and the judge acknowledged, that until a date shortly prior to the motel fire and less than one year prior to the commencement of the

---

[3]Section 170, subdivision 4, disqualifies a judge ''When, in the action or proceeding, or in any previous action or proceeding involving any of the same issues, he has been attorney or counsel for any party; or when he has given advice to any party upon any matter involved in the action or proceeding; or when he has been retained or employed as attorney or counsel for any party within two years prior to the commencement of the action or proceeding.''

action, the judge had been associated with the law firm which had represented American National, named as a defendant in the original complaint. (See fn. 1, *ante*.) The motion to disqualify was denied.

The parties then argued the demurrers, defendants contending as they had on the earlier demurrers that plaintiff had not only failed to allege a cause of action arising out of defendants' conduct but that any cause he might allege had become vested in the trustee in bankruptcy upon plaintiff's adjudication and that he therefore lacked capacity to assert such a cause. The court's order sustaining the demurrers without leave to amend recites that plaintiff has not stated a cause of action for any recoverable element of damages, and that any cause of action stated by plaintiff had passed to the trustee.[4]

The central question in this case is whether the several causes of action pleaded in the second amended complaint are actually vested in plaintiff himself or in his trustee in bankruptcy. To put it another way: Has plaintiff shown that he has the right to assert these claims or has such right passed to the trustee?

Our resolution of the problem turns on the federal statute. Section 70 of the Bankruptcy Act (11 U.S.C.A. § 110) provides in pertinent part as follows: "(a) The trustee of the estate of a bankrupt . . . shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title . . . to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: . . . (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property; . . ." As will appear the causes of action which plaintiff attempts to assert fall within the categories

---

[4]In sustaining the demurrers, the trial judge states in his "Ruling on Demurrers": "[Plaintiff's] cause of action, if any there be, arises out of breach of contract of the various policies of insurance and have [*sic*] passed to the trustee unless plaintiff, as he says, can create a new specie of damage which does not pass to the trustee in bankruptcy. To do this he alleges malice, fraud, overreaching and other expletives, but he in no wise alleges any fact upon which these conclusions could be drawn. He, therefore, has failed to allege a basis for his claim of damage. I consider his cause of action, if any, to be contractual in origin and specifically within the terms of Section 70 of the Bankruptcy Act. . . ."

830

described by clauses (5) and (6). We have concluded, therefore, that they are rights which passed to the trustee upon plaintiff's adjudication in bankruptcy, that they are not actionable claims resident in plaintiff, and that the demurrers were properly sustained. The judgment of dismissal must therefore be affirmed.

 We first take up the last five causes of action (fifth through ninth causes). Our consideration of these five causes together works no distortion of them, since, as we have pointed out, they involve a common gravamen—the failure of defendant insurers to adjust and settle the fire loss and damage promptly and without delay. The fifth through eighth causes of action make this charge against the four companies separately; the ninth cause, by the usual technique of repleading and incorporation by reference, makes the same charge against all four companies jointly.

It is manifest that these five causes of action constitute "rights of action arising upon contracts." (Bankruptcy Act, § 70, subd. (a)(6); 11 U.S.C.A. § 110, subd. (a)(6).) Each of them attempts to plead a cause of action for damages for breach of contract, namely, the particular insurance policy involved,[5] and to that end attempts to allege the essential elements of such a cause of action: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. (*Wise* v. *Southern Pac. Co.* (1963) 223 Cal.App.2d 50, 59 [35 Cal.Rptr. 652]; 2 Witkin, Cal. Procedure (1954) p. 1226.) Thus, in causes of action under examination, plaintiff alleges that he is the owner of the particular fire insurance policy, that upon occurrence of the fire and loss, he "did all things necessary on his part to do,"[6] that the defendant insurer failed and refused to proceed promptly to adjust and settle plaintiff's loss, and that as a result plaintiff suffered damage. A number of phrases scattered throughout further bespeak the contractual character of the right asserted, as for example: that defendant denied plaintiff's claim for indemnity "under the policy of insurance"; that "under the contract of insurance" defendant had a duty to adjust

---

[5] "Insurance is a *contract* whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." (Italics added.) (Ins. Code, § 22; see *Baumgarten* v. *Alliance Assur. Co.* (C.C. N.D. Cal. 1908) 159 F. 275.)

[6] In alleging performance, plaintiff may allege that he has "duly performed all the conditions on his part." (Code Civ. Proc., § 457.)

the loss fairly and promptly; that defendant "has by its actions wilfully refused to *perform its contract*" (italics added). The embellishments added by the pleader, as for example, that defendant "in doing all of the things as herein alleged, has done them deliberately, fraudulently and oppressively," and that defendant is "guilty of oppression and fraud," aside from their obvious conclusionary character, do not derogate from the contractual character of the pleading. In sum, it is abundantly clear that the liability sought to be imposed arises upon a contract.

This brings us to the allegation of damages caused by the breach. It is manifest at the outset that while plaintiff alleges a fire loss of $424,000, he nowhere seeks recovery of said sum. What plaintiff does seek to recover in the last five stated causes of action are in the nature of consequential damages flowing from the breach, which were actually contemplated or within the reasonable contemplation of the parties. (Civ. Code, § 3300; see *Hunt Bros. Co.* v. *San Lorenzo Water Co.* (1906) 150 Cal. 51, 56 [87 P. 1093, 7 L.R.A. N.S. 913]; *Weaver* v. *Bank of America* (1963) 59 Cal.2d 428, 434 [30 Cal.Rptr. 4, 380 P.2d 644]; *Ely* v. *Bottini* (1960) 179 Cal. App.2d 287, 294 [3 Cal.Rptr. 756].)

■ Plaintiff argues, however, that the claims asserted in the last five causes of action arose *after* the filing of his petition in bankruptcy, are "personal" to him, and did not vest in the trustee. But he has directed our attention to no authorities supportive of this argument. Nor has he demonstrated how the several causes of action here involved arose not at the time of breach as alleged in the pleading but at or after his adjudication in bankruptcy. In the first place, as we have already pointed out, plaintiff nowhere alleges that his bankruptcy caused the $1,500,000 damages which he seeks to recover. On the contrary, by plaintiff's own allegations, the bankruptcy is not the *cause* of his loss, but like the loss, is the *result* of defendants' alleged failure and refusal to perform under their contracts of insurance.

Generally speaking, a cause of action for breach of contract accrues at the time of the breach. (*Abbott* v. *76 Land & Water Co.* (1911) 161 Cal. 42, 47-49 [118 P. 425]; *Van Horne* v. *Treadwell* (1913) 164 Cal. 620, 622-623 [130 P. 5]; *Coughlin* v. *Blair* (1953) 41 Cal.2d 587, 598 [262 P.2d 305]; see 4 Corbin on Contracts, § 946.) In the instant case it is clear that the breach occurred prior to plaintiff's bankruptcy. Ignoring these principles as well as his own allegations, plaintiff

attempts to argue that he is in effect asserting a new cause of action which arose after and as a result of his becoming bankrupt. At best, plaintiff confuses a cause of action with damages resulting from a cause of action. "Compensatory damages do not constitute a plaintiff's cause of action. His cause of action arises from the wrong inflicted on him, and for the infliction of that wrong he is allowed an award of such damages. Moreover, since the elements of consequential damage experienced by the plaintiff as the result of a particular wrongful act relate back to the injury itself, they cannot form subsequent bases for new causes of action." (14 Cal.Jur.2d, Damages, § 14, p. 644; as to damages for breach of contract see *Abbott* v. *76 Land & Water Co., supra,* 161 Cal. 42, 47-49; *Van Horne* v. *Treadwell, supra,* 164 Cal. 620, 622-623; as to damages for tort see *Wood* v. *Currey* (1881) 57 Cal. 208, 210; *Hawthorne* v. *Siegel* (1891) 88 Cal. 159, 166 [25 P. 1114, 22 Am.St.Rep. 291].)

Particularly pertinent to the case before us is the reference of this court in *Abbott* to the "well settled principle that an entire claim arising either upon a contract or from a wrong cannot be divided and made the subject of several suits. In such a case it is no warrant for a second action that the party may not be able to actually prove in the first action all the items of the demand, or that all the damage may not then have been actually suffered. He is bound to prove in the first action not only such damage as has been actually suffered, but also such prospective damage by reason of the breach as he may be legally entitled to, for the judgment he recovers in such action will be a conclusive adjudication as to the total damage on account of the breach. (See generally on this subject 1 Sutherland on Damages, 3d ed., §§ 106, 108, 112, 113, 120.)" (161 Cal. at p. 48.)

Our attention has been invited to *Wooten* v. *Central Mut. Ins. Co.* (La.App. 1966) 182 So.2d 146, which deals with a claim for damages resulting from bankruptcy. There an insured under an automobile liability policy was forced into bankruptcy as a result of a judgment rendered against him in excess of the policy limits upon the insurer's unreasonable refusal to settle a claim within policy limits. The trustee in bankruptcy, in addition to seeking recovery of the excessive portion of the judgment, alleged a separate cause of action claiming damages for impairment of the reputation and credit of the bankrupt caused by the bankruptcy. While permitting the trustee to recover the excessive portion of **the judg**ment,

the Louisiana court upheld the dismissal of the additional cause of action for impairment of the bankrupt's credit and reputation since "any damage to [the bankrupt's credit or reputation by reason of the bankruptcy was necessarily sustained after the petition was filed vesting only previously-owned assets in the trustee, . . ." (182 So.2d at p. 150.) *Wooten* thus suggests that a bankrupt may prosecute a cause based on damage to his reputation and credit resulting when he is forced into bankruptcy by the breach of a contractual duty owed him.[7]

On the other hand, in *Patton* v. *Fidelity-Philadelphia Trust Co.* (E.D.Pa. 1965) 246 F.Supp. 1015, where the complaint alleged that as a result of the breach of an agreement plaintiff was unable to pay his creditors who commenced bankruptcy proceedings "thereby injuring plaintiff's credit and reputation," the court held that the plaintiff-bankrupt could not recover since the gravamen of the action "arises upon a contract" and the cause was vested in the trustee under section 70, subdivision (a)(6) of the Bankruptcy Act (11 U.S.C.A. § 110, subd. (a)(6), citing *Tamm* v. *Ford Motor Co.* (8th Cir. 1935) 80 F.2d 723.

We cannot see how *Wooten* assists plaintiff since the nature of the claim there asserted is fundamentally different from that in the instant case. Plaintiff here makes no claim of damage to his reputation and credit or that his loss was caused by the bankruptcy but, as we have explained, claims only that it resulted from defendants' refusal to perform under their contracts. *Wooten* concedes that such a claim would vest in the trustee as a cause of action "which could have been enforced by [the bankrupt] if he had not gone into bankruptcy." (182 So.2d at p. 148.) Moreover, and quite apart from the foregoing fundamental grounds for distinguishing *Wooten,* we are more impressed with the rationale of *Patton.*

We therefore conclude that the fifth through ninth causes of action constitute "rights of action arising upon contracts" and passed to the trustee in bankruptcy under section 70 subdivision (a)(6) of the act. Although this disposes

---

[7] In other instances it has been held that a cause sounding in tort for damage to the reputation or the good name and credit of a bankrupt, even when arising out of conduct prior to bankruptcy, has been held to be personal to the bankrupt and not to vest in the trustee. (*Boudreau v. Chesley* (1st Cir. 1943) 133 F.2d 623; *Gurfein* v. *Howell* (1925) 142 Va. 197 [128 S.E. 644].)

of the question before us, we additionally observe that these five causes of action fall within clause (5) of section 70 subdivision (a) since they are "rights of action, which prior to the filing of the petition he could by any means have transferred. . . ." (§ 70, subd. (a) (5) ; 11 U.S.C.A. § 110, subd. (a) (5).) Upon this basis also they passed to the trustee.

 It is settled that under the plain language of the above subsection of the statute "transferability is the determining factor" (*Horton* v. *Moore* (6th Cir. 1940) 110 F.2d 189, 191) and that generally speaking "the question of transferability is usually governed by state law, . . ." (*In re Goodson* (S.D.Cal. 1962) 208 F.Supp. 837, 843, and cases there collected.) It is manifest that the first five causes of action having arisen out of contract were rights of action which plaintiff could have transferred. (Civ. Code, §§ 953, 954 ;[8] see *Trubowitch* v. *Riverbank Canning Co.* (1947) 30 Cal.2d 335, 339-340 [182 P.2d 182], and cases there collected; *Farmland Irr. Co.* v. *Dopplmaier* (1957) 48 Cal.2d 208, 222 [308 P.2d 732, 66 A.L.R.2d 590].)

Even if we were of the view (which we are not) that the rights here involved were not of a clear-cut contractual nature, we would nevertheless have no doubt about their transferability. We have said that the "statutes in this state clearly manifest a policy in favor of the free transferability of all types of property, including rights under contracts." (*Farmland Irr. Co.* v. *Dopplmaier, supra,* 48 Cal.2d 208, 222.) As a general proposition it can be said " 'that the only causes or rights of action which are not transferable or assignable in any sense are those which are founded upon wrongs of a purely personal nature, such as slander, assault and battery, negligent personal injuries, criminal conversation, seduction, breach of marriage promise, malicious prosecution, and others of like nature. All other demands, claims and rights of action whatever are generally held to be transferable.' " (*Wikstrom* v. *Yolo Fliers Club* (1929) 206 Cal. 461, 463 [274 P. 959], quoting from 3 Street's Foundations of Legal Liability; see also *Rued* v. *Cooper* (1893) 109 Cal. 682, 693 [34 P. 98] ; 6 Am.Jur.2d, Assignments, § 29, p. 213.) The causes of action here engaging our attention cannot conceivably fall within any of the above categories designated as nontransferable.

---

[8]Civil Code section 953 provides: "A thing in action is a right to recover money or other personal property by a judicial proceeding."

Civil Code section 954 provides in pertinent part: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. . . ."

■ We now proceed to examine the first four stated causes of action which are the common counts. As we have said, these are against each of the defendant insurers separately for monies "received and collected to the use and benefit of the plaintiff" on February 1, 1964. It will be recalled that this is the day on which plaintiff purchased the motel and is substantially prior to the fire which occurred on February 19, 1964, and of course prior to the breach thereafter occurring as alleged in the last five causes of action. From a comparison of all nine counts, it is to be noted that the recovery sought in the first four is different in amount than that sought in the last five. There is good reason to believe that the first four counts seek the recovery of the premiums paid by plaintiff. (See fn. 2, *ante.*) But, all in all, the second amended complaint fails to disclose the relationship, if any, between the first four common counts and the last five causes of action. The common counts themselves contain no allegation of an adjudication in bankruptcy which, according to allegations elsewhere in the complaint, occurred after February 1, 1964.

■ In *Lambert* v. *Southern Counties Gas Co.* (1959) 52 Cal.2d 347, 352 [340 P.2d 608], we observed that "a count sufficient within itself may not ordinarily be defeated by importing, from another count, an allegation to which the sufficient count makes no reference. [Citations.]" We pointed out in that case that "There are exceptional instances where the allegations of one count have been considered in connection with the allegations of another count in ruling on a demurrer. Thus a common count may be joined with a count wherein all of the facts are specially pleaded; and if the count containing the specific facts is demurrable, so is the common count which is obviously based on the same set of facts. [Citations.] This rule with respect to pleadings involving a common count apparently is based 'on the anomalous nature of the common count in our system of pleading.' [Citation.] Similarly in an extension of this rule, a count in a complaint premised on detailed factual allegations in another count must stand or fall with the other count. [Citations.]" (Pp. 352-353.)

■ In the instant case, the second amended complaint does not disclose allegations bringing it within either of the foregoing exceptions. There are present here, however, other exceptional circumstances which upon demurrer permit the first four causes of action to be evaluated in the light of the

fact of plaintiff's bankruptcy. It will be recalled that plaintiff's original complaint contained an allegation as to his bankruptcy and that the demurrers interposed thereto were sustained upon the ground, among others, that plaintiff lacked capacity to sue. In both his first and second amended complaints, plaintiff thereafter set forth the four common counts now under examination, thereby alleging causes of action *ex contractu* which manifestly would have vested in the trustee by virtue of the bankruptcy allegations of the original complaint but which on their face failed to disclose the defect in plaintiff's right thereto arising from his bankruptcy. Plaintiff cannot circumvent a demonstrated defect by such an expedient.

We have said that "Where a verified complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation." (*Lamoreaux v. San Diego etc. Ry. Co.* (1957) 48 Cal.2d 617, 623 [311 P.2d 1]; see *Cothran v. San Jose Water Works* (1962) 58 Cal.2d 608, 615 [25 Cal.Rptr. 569, 375 P.2d 449]; *Hardy v. Admiral Oil Co.* (1961) 56 Cal.2d 836, 840 [16 Cal.Rptr. 894, 366 P.2d 310]; *Wennerholm v. Stanford University School of Medicine* (1942) 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358].) "In such a case the original defect infects the subsequent pleading so as to render it vulnerable to a demurrer." (*Owens v. Traverso* (1954) 125 Cal.App.2d 803, 804 [271 P.2d 164].) However, we have also made it clear that "a party should be allowed to correct a pleading by omitting an allegation which, it appears, was made as the result of mistake or inadvertence." (*Lamoreaux v. San Diego etc. Ry. Co., supra*; see *Meyer v. State Board of Equalization* (1954) 42 Cal.2d 376, 386 [267 P.2d 257].)

In the case before us, it does not appear that the original complaint is verified. Nevertheless we feel that the principle underlying the above authorities is applicable here. As we have said, plaintiff alleged in his original complaint that he was adjudicated a bankrupt on July 24, 1964; this was a fact peculiarly within his own knowledge. In the common counts of both his first and his second amended complaints, plaintiff makes no reference to the fact of his bankruptcy. Nor does he offer in the second amended complaint now under review any explanation asserting that such prior allegation of bankruptcy "was made as the result of mistake or inadvertence" (*Lamoreaux v. San Diego etc. Ry. Co.,*

*supra,* 48 Cal.2d 617, 623) and explaining that its omission from the common counts is for the purpose of correcting an error. On the contrary, in the last five causes of action plaintiff repeats the allegation that he was adjudicated a bankrupt on July 24, 1964. In addition, the transcript of the oral argument on the demurrers discloses plaintiff's unequivocal statement that the second amended complaint was as well pleaded as he could make it and that the trial judge, if he were inclined to sustain the demurrers, should do so without leave to amend. Indeed, for our present purposes the bankruptcy allegation appears as well established as if the original complaint had been verified. In view of the foregoing, we are satisfied that in examining the four common counts, we can consider plaintiff's prior allegation that he was adjudicated a bankrupt on the date given. (See generally 2 Witkin, Cal. Procedure (1954) p. 1197; 2 Chadbourn, Grossman and Van Alstyne, Cal. Pleading (1961) pp. 360-361.) Thus examining them, we conclude that the four common counts were also vulnerable to the demurrers, since the causes of action therein set forth also become vested in the trustee in bankruptcy, and that plaintiff lacked the capacity to assert them.

██ Finally we take up plaintiff's contention that his oral motion to disqualify the trial judge should have been granted. As previously noted, before his appointment to the bench and well within two years prior to the commencement of the action (Code Civ. Proc., § 170, subd. 4; see fn. 3, *ante*), the judge had been associated with the law firm representing American National which had been named a defendant in the original complaint but as to whom the action had been dismissed prior to the filing of the first amended complaint. (See fn. 1, *ante*.) The action was assigned to this judge for the first time after the first amended complaint had been filed and after the above dismissal of American National. He heard and ruled upon the demurrers to the first and second amended complaints but participated in no way in the action while American National was a party defendant. Plaintiff did not move for his disqualification until the hearing of the demurrers to the second amended complaint.

We need not decide the close question as to whether the trial judge was disqualified as a result of the above developments since even if it is assumed that he was, it clearly appears from the instant record that plaintiff waived the disqualification by failing to assert it in the manner required by the statute.

Section 170 of the Code of Civil Procedure provides that whenever a judge "who shall be disqualified under the provisions of this section" fails to declare his disqualification, any party to the action may file "a written statement objecting to the hearing of such matter or the trial of any issue of fact or law in such action or proceeding before such judge, and setting forth the fact or facts constituting the ground of the disqualification of such judge.

". . . The statement of a party objecting to the judge on the ground of his disqualification, shall be presented *at the earliest practicable opportunity*, after his appearance and discovery of the facts constituting the ground of the judge's disqualification, and *in any event before the commencement of the hearing of any issue of fact* in the action or proceeding before such judge." (Italics added.)[9]

Plaintiff did not comply with the foregoing procedure. As pointed out, his motion to disqualify was made orally at the time of the argument on the demurrers to the *second* amended complaint. No written statement as required by the statute was ever made. Nor does the record disclose that plaintiff voiced his objection "at the earliest practicable opportunity" after his counsel's "discovery of the facts constituting the ground of the judge's disqualification" especially when it does appear that the same judge heard and ruled upon demurrers to plaintiff's *first* amended complaint two months before. Under the above circumstances, if the trial judge were disqualified, plaintiff waived the disqualification by his failure to urge it in the manner and at the time required by the statute. (*Caminetti* v. *Pacific Mutual Life Ins. Co.* (1943) 22 Cal.2d 386, 391-392 [139 P.2d 930]; *Sacramento etc. Drainage Dist.* v. *Jarvis* (1959) 51 Cal.2d 799, 800-802 [336 P.2d 530]; *Mayo* v. *Beber* (1960) 177 Cal.App.2d 544, 548-551 [2 Cal. Rptr. 405]; *Rio Vista Gas Assn.* v. *State of California* (1961) 188 Cal.App.2d 555, 564 [10 Cal.Rptr. 559]; *People* v. *Pratt* (1962) 205 Cal.App.2d 838, 842-843 [23 Cal.Rptr. 469].)

The attempted appeal from the denial of plaintiff's motion to disqualify the trial judge is dismissed. The judgment is affirmed.

Traynor, C. J., McComb, J., and Burke, J., concurred.

---

[9]Part of language added by 1927 amendment (Stats. 1927, ch. 744, § 1, p. 1403). This language appears in certain paragraphs between subdivisions 5 and 6.

PETERS, J.—I dissent.

Plaintiff has sufficiently alleged against a general demurrer that he had fire insurance policies, that a fire occurred, that the insurers wrongfully refused to pay the fire loss, that as a result of the wrongful refusal he was forced into bankruptcy. and that as a result of the bankruptcy caused by the wrongful refusal to pay the fire loss he suffered damages in the amount of $1,500,000.[1] It is my view that such allegations state a cause of action and that this cause of action has not passed to the trustee in bankruptcy.

As I understand the opinion of the majority, it is not disputed that plaintiff has sufficiently alleged against a general demurrer that he had fire insurance, that the fire occurred, that the insurers wrongfully refused to pay the fire loss, or that as a result of the wrongful refusal he was forced into bankruptcy. The only dispute with regard to the sufficiency of the allegations is as to whether plaintiff has sufficiently alleged that as a result of the bankruptcy caused by the wrongful refusal to settle plaintiff suffered the loss.

Thus, the majority state, "plaintiff nowhere alleges that his bankruptcy caused the $1,500,000 damages which he seeks to recover. On the contrary, by plaintiff's own allegations, the bankruptcy is not the *cause* of his loss, but like the loss, is the *result* of defendants' alleged failure and refusal to perform under their contracts of insurance." (Italics in the original. *Ante*, p. 831.) Or as stated earlier in the opinion: "Although the complaint contains allegations of bankruptcy, and that the adjudication thereof was 'caused by the bad faith conduct on the part of the insurer,' the fact of the bankruptcy, or the filing of the petition therein, is in no way alleged to have *caused* the $1,500,000 loss to plaintiff. According to the allegations, the bankruptcy is not a *cause* of plaintiff's loss, but like the loss is a *result* of defendants' alleged bad faith, oppressive and fraudulent conduct in failing to come to plaintiff's aid as defendants were expressly or impliedly obligated to do." (Italics in the original.) (*Id.* at p. 828.)

---

[1]These allegations are found in causes of action five through nine of the second amended complaint. In my view, plaintiff states a cause of action by alleging merely that the wrongful conduct in refusing to pay the fire loss caused damages, and it would be unnecessary to allege further that the bankruptcy was a causal factor in the loss. The importance of the allegation that the bankruptcy was part of the causal chain resulting in the damages is that this allegation, as will appear hereinafter, prevents the cause of action from vesting in the trustee in bankruptcy.

The quoted statements should not be interpreted as meaning that plaintiff has *expressly* alleged that "the bankruptcy is not a *cause* of plaintiff's loss;" plaintiff simply has not expressly alleged what is the causal relation between the bankruptcy and the loss. To jump from the absence of express allegation of causal connection, in construing a complaint against a general demurrer, to the conclusion that plaintiff has alleged that there was no causal connection is, in the circumstances of this case, to repudiate almost one hundred years of progress in relegating the importance of pleading to its proper place in light of the fundamental consideration that causes of action should be determined on their merits and that the technical requirements of pleading should not constitute a trap for the unwary or be permitted to preclude the fair administration of justice.

Since 1872 the cardinal rule of construction of pleadings set forth in section 452 of the Code of Civil Procedure has remained unchanged. The section provides: "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties."

"While orderly procedure demands a reasonable enforcement of the rules of pleading, the basic principle of the code system in this state is that the administration of justice shall not be embarrassed by technicalities, strict rules of construction, or useless forms." (*Buxbom* v. *Smith,* 23 Cal.2d 535, 542 [145 P.2d 305].) The old common law rule that a pleading must be construed most strongly against the pleader has been abrogated and superseded by the rule of the statute. (*Estate of Wickersham,* 153 Cal. 603, 608 [96 P. 311]; *Menefee* v. *Oxnam,* 42 Cal.App. 81, 96 [183 P. 379]; see Clark on Code Pleading (2d ed. 1947) pp. 344-345.) Even as against a *special* demurrer, this court has established the rule that it should be overruled if the allegations of the complaint are sufficiently clear to apprise the defendants of the issues they are to meet. (*Hudson* v. *Craft,* 33 Cal.2d 654, 661 [204 P.2d 1, 7 A.L.R.2d 696]; *Lord* v. *Garland,* 27 Cal.2d 840, 853 [168 P.2d 5].) A general demurrer should be overruled if the complaint upon any theory states a cause of action (*Lord* v. *Garland, supra,* 27 Cal.2d 840, 853), and the proper test is whether the pleading gives fair notice of the pleader's position (see Clark on Code Pleading, *supra,* p. 346).

The proper judicial approach to the construction of pleadings is stated in *Terry Trading Corp.* v. *Barsky,* 210 Cal. 428,

438 [292 P. 474], with regard to an answer and counterclaim: "Doubtless these pleadings could be improved upon, but it can hardly be said that they fail to apprise plaintiff of the defenses and demands for affirmative relief which defendant makes. It is sometimes a difficult task for the pleader to state enough facts to establish his cause of action or defense, and also to avoid the inclusion of confusing evidentiary matter. The code has provided adequate means for the correction of an error in either direction; the adverse party may move to strike out the evidentiary matter or demur specially to an inadequate statement of the facts on the ground of uncertainty or ambiguity. But to deny the party his right to a trial, there must be an obvious failure of the pleadings to state a cause of action or defense. This is not the case here, and as against the general demurrers, they should stand. We are enjoined by statute to construe pleadings liberally (Code Civ. Proc., § 452) and such has been our practice."

It seems clear that a plaintiff has no burden to anticipate a possible defense and to allege that his cause of action has not passed to a trustee in bankruptcy (see 2 Witkin, Cal. Procedure (1954), pp. 1172-1173, 1452); a contrary rule would mean that in almost every case the plaintiff must allege facts showing that he is not a bankrupt. I, as well as my associates I am sure, have drafted and read enough complaints to realize the trap with resulting injustice that would be caused by the contrary rule. Since there is no burden of allegation upon the plaintiff, a general demurrer should be sustained on the theory that the cause of action has passed to the trustee in bankruptcy only where it appears affirmatively from the allegations of the complaint, without regard to the necessity of inference, that upon any view of the complaint the cause has vested in the trustee and not the plaintiff. (Cf. *Klopstock* v. *Superior Court,* 17 Cal.2d 13, 19 [108 P.2d 906, 135 A.L.R. 318].)

In view of the rule that as against a general demurrer the complaint must be liberally construed and the further rule that a general demurrer should not be sustained on the ground that the cause of action stated is not vested in the plaintiff unless that fact affirmatively appears from the complaint, it seems clear to me that, in construing the complaint, it must be concluded that the complaint sufficiently alleges that the bankruptcy was part of the causal chain which caused loss.

First, the mere allegation of bankruptcy as part of plaintiff's cause of action should mean that, as against a general demurrer, we should infer that the allegation is part of the cause of action and thus is one of the factors which related to defendant's wrongful conduct and the injury sustained.

Second, even if the mere allegation of bankruptcy is not enough, plaintiff has alleged that defendant's wrongful conduct in refusing to pay the fire loss caused "plaintiff to lose possession of the property." Obviously, a refusal to pay money does not cause the loss of property unless there is some intervening event such as a foreclosure of a lien, a sale under a power of sale, or a bankruptcy. The only such act alleged to have occurred here is bankruptcy. To refuse to adopt the obvious inference from the facts alleged is a clear case of strict construction, contrary to the rule established by the code and our cases.

In concluding that plaintiff has alleged that the bankruptcy was not a cause of the loss, the majority reasons that this conclusion appears because plaintiff has failed to specifically allege the contrary and has alleged that the bankruptcy is the result of defendants' wrongful conduct, and that such conduct is the cause of the loss. The maxim *expressio unius est exclusio alterius* is widely used in the interpretation of statutes, which are ordinarily very carefully drafted and studied by numerous persons prior to enactment, but even as to statutes courts have refused to apply the maxim in appropriate cases where other rules of construction indicate that to follow it would be contrary to legislative intent. (See 45 Cal.Jur.2d 639-640.) In construing pleadings, which are ordinarily drafted by a single attorney with nowhere near the time, expense, or deliberation used by statutory draftsmen and legislators, the maxim should not be applied when to apply it would be contrary to the rule of liberal construction of pleadings.

The tragic result of strict construction of the pleadings is, of course, that a plaintiff having a just cause of action will be denied recovery because of his attorney's ineptness or carelessness in setting forth the basis of the claim and because the defendant's attorney has developed the art of picking apart a pleading when he is well aware of the nature and details of the claim, an art which should have no place in the Temple of Justice. The tragedy is accentuated where the issue as to sufficiency of allegation relates to a matter of record as to which there can be no substantial factual dispute, and, where from the pleadings and the undisputed facts stated in the briefs,

the plain inference is contrary to the fact found by strictly construing the pleading.

Unfortunately, this seems to be just such a case. From the complaint it would seem clear that the plaintiff's property was lost because of the bankruptcy because there is no allegation that the property was lost by foreclosure of a lien, tax sale, or other such proceeding. Although plaintiff alleges that his title was subject to a trust deed, the complaint does not show when or if the trust deed was foreclosed, and in the briefs it appears undisputed that the trust deed was not foreclosed until a substantial period after the adjudication of bankruptcy. *Never* in the arguments before the trial court on the demurrers to the first and second amended complaints, or in the many briefs filed on appeal, have the insurers, or any of them, urged that the bankruptcy was not part of the causal chain in the loss of the property or that the complaint does not sufficiently allege that the bankruptcy was part of the causal chain. The absence of such claim is particularly persuasive in view of the fact that this court in its prior opinion characterized plaintiff's claim in part as ''bankruptcy caused plaintiff to suffer a loss that he would not have suffered otherwise'' (*Reichert* v. *General Ins. Co. of America* (Cal.), 59 Cal.Rptr. 724, 732, 428 P.2d 860), and that after such characterization briefs were filed on rehearing in this court. In the circumstances, the silence of the insurers is deafening.

Finally, I must point up the anomaly of the majority's position in this regard. The majority devotes its entire opinion, with the inferences drawn from the complaint and the lengthy discussion of legal principles, to establish that plaintiff's *cause of action* passed to the trustee in bankruptcy. The majority refuses to conclude that the *property* passed to the trustee in bankruptcy although this is the obvious inference from the complaint when considered in the light of the legal principles applied by the majority. If we are to reason assiduously and with great inventiveness and fervor that a cause of action vested in the trustee, should we not reason equally as assiduously and with as great inventiveness and fervor that the property vested in the trustee, when the latter, but not the former, reasoning will further the statutory command of liberal construction? An answer in the negative, as the majority in effect supplies, is not warranted either by policy or fundamental considerations of logic.

I also disagree with the majority's conclusion that a cause of action to recover damages for a loss caused by bankruptcy

passes to the trustee in bankruptcy. (Section 70 of the Bankruptcy Act (11 U.S.C.A. § 110) provides as follows: "(a) The trustee of the estate of a bankrupt . . . shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title . . . to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: . . . (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property; . . ."

It is evident that the statute makes a fundamental distinction between assets and rights of action possessed by the bankrupt prior to the filing of the petition of bankruptcy and those acquired thereafter, and it is well settled that assets and rights of action acquired after bankruptcy with certain exceptions not relevant here do not pass to the trustee. (See e.g., *Sparhawk* v. *Yerkes*, 142 U.S. 1, 14 [35 L.Ed. 915, 918, 12 S.Ct. 104].) "Stated broadly, the general rule is that the bankruptcy trustee takes title to all the property of the bankrupt enumerated in § 70a, whether in possession or in action, as determined at the time the petition is filed, . . . Since the time of filing the petition is the date of cleavage, it may also be stated as a general rule that the trustee does not take title to property acquired by the bankrupt after such time." (Collier Bankruptcy Manual (1967) pp. 932-933; see also 3 Remington on Bankruptcy (1957) p. 316.)

In *Wooten* v. *Central Mut. Ins. Co.* (La. App.) 182 So.2d 146, it was held that, since the trustee is vested with rights of action which could be transferred or seized "prior" to the filing of the petition, he is not vested with a cause of action not vested in the bankrupt prior to the filing of the petition and that a cause of action for damages for impairment of credit and reputation caused by the bankruptcy due to defendant's wrongful conduct prior to bankruptcy did not vest in the trustee since the damage was necessarily sustained after the filing of the petition. In that case, a man was forced into bankruptcy by a judgment rendered against him after his insurance company refused to settle a suit. The trustee in bankruptcy sued the insurance company for unreasonable refusal to settle the claim, seeking $10,000 for the amount of the judgment in excess of the policy limits, and in addition

the trustee sought $150,000 for the impairment of credit and reputation caused by the bankruptcy. The court held that the trustee was vested with the claim for excess judgment but not with the claim for impairment of credit and reputation, since the latter claim had not vested in the bankrupt prior to the time that the petition was filed.

The same principle should apply here. The damages plaintiff is seeking are for the loss he suffered due to the filing of the bankruptcy, and that loss necessarily was not suffered prior to bankruptcy.

The majority seek to distinguish *Wooten* and claim that the case supports them because plaintiff assertedly has not alleged that his loss was caused by the bankruptcy, but, as demonstrated above, this construction of the pleading is improper. The majority also suggest that insofar as *Wooten* holds that the cause of action for impairment of credit and reputation did not vest in the bankrupt prior to bankruptcy and did not pass to the trustee, the case is wrong. Reliance is placed upon *Patton* v. *Fidelity-Philadelphia Trust Co.* (E.D. Pa. 1965) 246 F.Supp. 1015. Although *Patton* holds that a cause of action for impairment of credit and reputation caused by bankruptcy passes to the trustee, the judge did not discuss the question whether the cause of action vested prior to bankruptcy, and the case furnishes no basis for rejection of *Wooten*. Moreover, an injury to credit and reputation caused by bankruptcy by its nature will affect the bankrupt's earning power after bankruptcy and not before, earnings of a bankrupt after bankruptcy are after-acquired property and do not pass to the trustee (e.g., *Hudson* v. *Wylie*, 242 F.2d 435, 444), and I do not believe that the creditors of a bankrupt should benefit by permitting the trustee to recover damages for an injury which can only affect the bankrupt's earning power after bankruptcy and does not affect the bankrupt's estate or earning power prior to bankruptcy.

In concluding that plaintiff's cause of action arose prior to bankruptcy and thus passed to the trustee, the majority also rely upon the general rule that a plaintiff's cause of action arises from the wrong inflicted on him and that " 'since the elements of consequential damage experienced by the plaintiff as the result of a particular wrongful act relate back to the injury itself, they cannot form subsequent bases for new causes of action.' (14 Cal.Jur.2d, Damages, § 14, p. 644; as to damages for breach of contract see *Abbott* v. *76 Land & Water*

*Co., supra,* 161 Cal. 42, 47-49; *Van Horne* v. *Treadwell, supra,* 164 Cal. 620, 622-623; as to damages for tort see *Wood* v. *Currey* (1881) 57 Cal. 208, 210; *Hawthorne* v. *Siegel* (1891) 88 Cal. 159, 166 [25 P. 1114, 22 Am.St.Rep. 291].)" (*Ante,* p. 832.) The majority also rely on the closely related general rule that a party is bound to prove in a single action arising from a single wrong not only such damages as have been actually suffered but also such prospective damages by reason of the breach as he may be legally entitled to.

There are numerous exceptions to the general rule relied upon by the majority. Among the recent cases of this court which have applied exceptions to the rules that a cause of action accrues at the time of the wrongful conduct of the defendant and that all prospective damages must be recovered in a single action are *Tu-Vu Drive-In Corp.* v. *Davies,* 66 Cal.2d 435, 437 [58 Cal.Rptr. 105, 426 P.2d 505]; *Day* v. *Greene,* 59 Cal.2d 404, 411 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802]; *Amen* v. *Merced County Title Co.,* 58 Cal.2d 528, 534 [25 Cal.Rptr. 65, 375 P.2d 33]; *Aced* v. *Hobbs-Sesack Plumbing Co.,* 55 Cal.2d 573, 583-585 [12 Cal.Rptr. 257, 360 P.2d 897]; *Bellman* v. *County of Contra Costa,* 54 Cal.2d 363, 369 [5 Cal.Rptr. 692, 353 P.2d 300]; *Brewer* v. *Simpson,* 53 Cal.2d 567, 593 [2 Cal.Rptr. 609, 349 P.2d 289]; *Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654, 662 [328 P.2d 198]; *Coots* v. *Southern Pac. Co.,* 49 Cal.2d 805, 806 et seq. [322 P.2d 460]; *Bennett* v. *Hibernia Bank,* 47 Cal.2d 540, 559 et seq. [305 P.2d 20]; see *Alter* v. *Michael,* 64 Cal.2d 480, 483 [50 Cal.Rptr. 553, 413 P.2d 153]; 1 Witkin, California Procedure (1954) Actions, sections 119, 120, 123, 125, 132, 133, 153, 156.

The above-cited authorities as well as many more that could be cited show that based on various considerations there are numerous exceptions to the general rules relied upon by the majority and that those rules are general only in the sense that they are applied where neither authority nor practical considerations warrant departure from them.

Both authority and practical considerations show that a cause of action for damages caused by bankruptcy resulting from a defendant's wrongful conduct accrues at the time of bankruptcy, the time of injury, rather than the time of the defendant's wrongful conduct. As we have seen, it was so held in *Wooten* v. *Central Mut. Ins. Co., supra,* 182 So.2d 146, the only case cited or found which determined the point. California authorities in analogous situations have also held that

the cause of action accrues at the time of injury, not at the time of wrongful conduct. In *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, 662, an insurance company wrongfully denied coverage of an automobile accident and on that basis refused a settlement within the policy limits. A judgment in excess of the policy limits was subsequently recovered against the insured, and it was held that a cause of action to recover damages for wrongful refusal to promptly settle the claim accrued at the time of injury, the time when the judgment in excess of the policy limits became final. It was not held that the cause accrued at the time of the wrongful conduct of the insurer in denying coverage and refusing the settlement. The same rule as to accrual of the cause of action was applied in *Brown* v. *Guarantee Ins. Co.,* 155 Cal. App.2d 679, 690 [319 P.2d 69], which also involved an insurer's refusal to settle within the policy limits.

The *Comunale* and *Brown* cases are, of course, not squarely in point, but they are analogous because, as in the instant case, the essence of the cause of action is to recover damages for an insurer's refusal to promptly settle a covered claim.

Although not as closely in point but still analogous is the case of *Walker* v. *Pacific Indem. Co.,* 183 Cal.App.2d 513, 515 et seq. [6 Cal.Rptr. 924], where a broker agreed to purchase a truck liability insurance policy with a $50,000 limit for bodily injury but negligently secured a policy with a $15,000 limit. An accident subsequently occurred, and a judgment was recovered against the insured in the amount of $100,000. It was held that the action against the broker for the $35,000 difference did not accrue at the time the broker procured the wrong policy or at the time the accident occurred but that the cause of action accrued at the time the verdict for $100,000 was returned.

Certainly in *Comunale,* and probably in *Brown* and *Walker,* a cause of action accrued at the time of the wrongful conduct of the defendant, but at that time it was uncertain whether a judgment would be entered in excess of the policy limits. (Cf. *County of Santa Clara* v. *Hayes Co.,* 43 Cal.2d 615, 617-619 [275 P.2d 456].) In other words, although injury may have been sustained at an earlier time, it was uncertain at that time whether another injury different in character would be subsequently suffered. This is true in the instant case. At the time of the insurer's refusal to pay the fire loss, it was clear that plaintiff had suffered an injury, and an

action would lie. But it was uncertain whether plaintiff would become a bankrupt as a result of the refusal to pay.

In my view, it is apparent that great mischief would be caused to the law of the state if we were to apply the general rules relied upon by the majority to cases like this and *Comunale*. Under those general rules, a plaintiff may recover for prospective damages to be caused by bankruptcy in a single action which accrues at the time of the wrongful conduct. Thus, had plaintiff in the instant case sued and gone to trial prior to July 24, 1964, the date of the bankruptcy, he could recover, if we are to apply the general rule literally, for any damages he could show that were likely to occur by the imminent bankruptcy, and his recovery, if based on substantial evidence, would have to be upheld on appeal. Thus, if plaintiff's allegations are true, he would be entitled to recover in such an action not only the $424,000 for the fire loss but also the $1,500,000 damages which would result from the bankruptcy which, although it had not occurred, was imminent. Similarly, in the *Comunale* situation, a plaintiff on the basis of evidence to the effect that the insurer's refusal to settle within the policy limits would result in a judgment against him in excess of the policy limits, could recover the amount of the anticipated judgment, and, so far as I can see, such recovery, if we are to apply the general rules urged by the majority, would be valid whether or not there was a subsequent judgment equal to or in excess of the policy limits against the insured. Under the general rules relied upon by the majority, I should think that plaintiffs would *always* seek recovery before bankruptcy or before judgment in excess of the policy limits because in the event of a quick recovery they could avoid bankruptcy by paying their creditors or avoid a judgment in excess of the policy limits by settling with the injured party and thus retain the prospective damages while at the same time avoiding the prospective injury. To reject application of rules which would result in such nonsense citation of authority is unnecessary.

Accordingly, I conclude that plaintiff has sufficiently alleged as against a general demurrer that he suffered a loss caused by the bankruptcy, that a right of action to recover damages for such loss does not accrue at the time of the wrongful conduct of the defendant but at the time of injury, the filing of the petition in bankruptcy, and that since the right of action does not arise until the filing of the peti-

tion, it is not a right of action arising prior to bankruptcy and has not vested in the trustee.

The remaining question in the view I take of the matter is one with which the majority does not deal, namely, whether plaintiff may recover damages caused by bankruptcy which resulted from the wrongful conduct of insurers in failing to pay a fire loss.

An insurance policy is, of course, a contract. (Ins. Code, § 22.) For breach of contract the usual measure of damages is all detriment flowing from the breach which the breaching party contemplated or should have contemplated at the time of contracting as likely to result from his failure to perform. (Civ. Code, § 3300; *Weaver* v. *Bank of America,* 59 Cal.2d 428, 434 [30 Cal.Rptr. 4, 380 P.2d 644]; *Ely* v. *Bottini,* 179 Cal.App.2d 287, 294 [3 Cal.Rptr. 756].)

Where the owner of a heavily mortgaged motel or other business property suffers a substantial fire loss, the owner may be placed in financial distress, may be unable to meet his mortgage payments, and may be in jeopardy of losing his property and becoming a bankrupt. A major, if not the main, reason why a businessman purchases fire insurance is to guard against such eventualities if his property is damaged by a fire. Certainly, the property owner who purchases fire insurance may reasonably expect that if a fire occurs, the insurance proceeds will be promptly available to protect him from those eventualities. The business of the fire insurer is to provide such protection. Insurers are, of course, chargeable with knowledge of the basic reasons why fire insurance is purchased, and of the likelihood that an improper delay in payment may result in the very injuries for which the insured sought protection by purchasing the policies.

The question whether a particular kind of damages is within the reasonable contemplation of the parties is not one which ordinarily can be resolved on demurrer. (*Weaver* v. *Bank of America, supra,* 59 Cal.2d 428, 434.) Certainly this court cannot say, as a matter of law, that at the time of contracting the defendants should not have contemplated that plaintiff would be in very serious financial trouble if a fire destroyed one-third of his motel and the insurers refused to perform their contractual obligations. (Cf. *Venturi* v. *Zurich General etc. Co.,* 14 Cal.App.2d 89 [57 P.2d 1002]; *Henkel* v. *Pacific Employers Ins. Co.,* 140 Cal.App.2d 301, 305-307 [295 P.2d 80].)

The insurers' liability is not limited to the amount specified in the policy (Ins. Code, § 2071). (See *Crisci* v. *Security Ins. Co.*, 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]; *Comunale* v. *Traders & General Ins. Co.*, *supra*, 50 Cal.2d 654; *Venturi* v. *Zurich General etc. Co.*, *supra*, 14 Cal.App.2d 89.) "The policy limits restrict only the amount the insurer may have to pay in the performance of the contract . . . they do not restrict the damages recoverable by the insured for a breach of contract by the insurer." (*Comunale* v. *Traders & General Ins. Co.*, *supra*, at p.659.)

It is clear that plaintiff has alleged sufficient facts to show detriment which, within the meaning of section 3300 of the Civil Code, the breaching party contemplated or should have contemplated at the time of contracting as likely to result from his failure to perform.

The fire insurers urge, however, that the ordinary measure of damages for breach of contract set forth in section 3300 of the Civil Code is not applicable, that the damages recoverable here are set forth in section 3302 of the Civil Code, and that the latter section provides the exclusive measure of damages for breach of an obligation to pay money.

Section 3302 of the Civil Code provides: "The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon."

An analogous problem was presented in *Royer* v. *Carter*, 37 Cal.2d 544, 550 [233 P.2d 539]. *Royer* held that section 3307[2] of the Civil Code does not provide the exclusive measure of damages for breach of an agreement to purchase an estate in real property and that a seller can recover not only the excess of the amount due under the contract over the value of the property to him but also additional expenses, such as escrow charges, title charges, and broker's fees, borne by the seller because of the breach. The court reasoned that injustice would result if the seller could not recover such additional expenses when they were the natural consequences of the breach. *Royer* was followed in *Honey* v. *Henry's Franchise Leasing Corp.*, 64 Cal.2d 801, 805 [52 Cal.Rptr. 18, 415 P.2d 833]; *Allen* v. *Enomoto*, 228 Cal.App.2d 798, 803-804 [39 Cal.Rptr. 815];

---

[2]Section 3307 of the Civil Code provides: "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him."

and *Pasteur Realty Corp.* v. *La Fleur,* 154 Cal.App.2d 5, 9 [315 P.2d 374]. Similarly, it has been held that former section 3311 of the Civil Code did not establish the exclusive measure of damages for breach of an agreement to buy personal property. (*King* v. *Globe Grain etc. Co.,* 58 Cal.App. 105, 114 [208 P. 166].)

Section 3302 provides that the detriment caused by a breach "is deemed to be" the amount due plus interest. Section 3307, which was construed in *Royer,* also contains that quoted phrase, but, as pointed out above, *Royer* rejected the view that section 3307 set forth the exclusive measure of damages. Other cases have expressly recognized that while "deemed" can create a conclusive presumption, "deemed" may also raise only a rebuttable presumption. (*Board of County Comrs. of County of Logan* v. *Morris,* 147 Colo. 1 [362 P.2d 202, 205]; *Brimm* v. *Cache Valley Banking Co.,* 2 Utah 2d 93 [269 P.2d 859, 863-864]; *Zimmerman* v. *Zimmerman,* 175 Ore. 585 [155 P.2d 293, 300]; *Erickson* v. *Erickson,* 167 Ore. 1 [115 P.2d 172, 178], and cases cited; *In re Barbour's Estate,* 185 App.Div. 445 [173 N.Y.S. 276, 280]; *Kleppe* v. *Odin Tp., McHenry County,* 40 N.D. 595 [169 N.W. 313, 314-315].) The code commissioners in their annotation to section 3302 indicated that they were cognizant of a statute that created a conclusive presumption. (See 2 Haymond & Burch, Civil Code of the State of California (1872) p. 391 which refers to section 1929 of the Louisiana Civil Code of 1825.)[8] Nevertheless the commissioners and the Legislature did not use such language.

In two situations it has been held in this state that damages for the breach of an obligation to pay money are not limited to the sum specified in the contract plus interest. Thus consequential damages have been permitted for failure to make a loan, and where the contract called for the payment to be made to a third party. (*Hunt* v. *United Bank & Trust Co.,* 210 Cal. 108 [291 P. 184]; *Venturi* v. *Zurich General etc. Co., supra.* 14 Cal.App.2d 89.)

It is true that the general rule at common law is that the damages for breach of a contractual obligation to pay money are the amount due plus interest thereon. (*Lally* v. *Wise,* 28 Cal. 539, 543-544; *Heyman & Co.* v. *Landers,* 12 Cal. 107, 111; *Guy* v. *Franklin,* 5 Cal. 416, 417.) The rule is based on three

---

[3]"The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more."

theories. First, money is always available in the market at the lawful rate of interest. (*Lowe* v. *Turpie,* 147 Ind. 652 [44 N.E. 25, 33, 37 L.R.A. 233].) Second, consequential damages are too remote to be proximately caused by the delay in pay-. ment. (*Friend & Terry Lbr. Co.* v. *Miller,* 67 Cal. 464, 467 [8. P. 40].) Third, the rule provides "a measure of damages of easy and certain application." (5 Williston, Contracts (1937) § 1410, p. 3926.)

Those reasons are not convincing. The facts of this case demonstrate that money is not always available in the market. (See also *Venturi* v. *Zurich General etc. Co., supra,* 14 Cal. App.2d 89; *Hunt* v. *United Bank & Trust Co., supra,* 210 Cal. at p. 117; 5 Corbin, Contracts (1964) § 1078, p. 447.) Nor are consequential damages always so remote that the defendant should not be held responsible for them. (*Weaver* v. *Bank of America, supra,* 59 Cal.2d 428, 432-435.) The claimed simplicity of determining damages by limiting the damages to the sum due plus interest should not justify the great hardship that such simplicity may cause. As Jessel, M.R., said in *Wallis* v. *Smith* (1882) 21 Ch.D. 243, 257, "Now it may well be that the Courts thought that it was absurd to make a man pay a larger sum by reason of the non-payment of a smaller. It has always appeared to me that the doctrine of the English law as to non-payment of money—the general rule being that you cannot recover damages because it is not paid by a certain day, is not quite consistent with reason. A man may be utterly ruined by the non-payment of a sum of money on a given day, the damages may be enormous, and the other party may be wealthy. However, that is our law. If however, it were not our law the absurdity would be apparent."

In view of the injustice which could otherwise result, section 3302 of the Civil Code should not be construed as establishing the exclusive measure of damages for breach of an obligation to pay money or to limit the damages recoverable under section 3300 of that code, and that the word "deemed" in section 3302 creates only a rebuttable presumption that interest will compensate a non-breaching party for all the detriment which he suffers and which the breaching party did or should have contemplated at the time of contracting as likely to flow from the breaching party's failure to make timely delivery of the money he had contracted to pay.

This interpretation of section 3302 is not inconsistent with prior California case law. *Heyman & Co.* v. *Landers, supra,* 12 Cal. 107, and *Lally* v. *Wise, supra,* 28 Cal. 539, denied interest

in excess of the statutory rate, and *Gray* v. *American Surety Co.,* 129 Cal.App.2d 471 [277 P.2d 436], held that the market rate of interest was irrelevant. When the damages sought are only interest, the convenience of a fixed rate may outweigh the hardship caused by awarding a larger or smaller sum than the actual damages. *Knight* v. *Marks,* 183 Cal. 354, 357 [191 P. 531], and *Ricker* v. *Rombough,* 120 Cal.App.2d Supp. 912, 917 [261 P.2d 328], used section 3302 to invalidate clauses in leases that provided for defaulting lessees to pay more than the rent due. Section 3302 was not needed for that purpose, and Civil Code section 3308 now governs the situation. *Hartford* v. *All Night & Day Bank,* 170 Cal. 538, 540-541 [150 P. 356, L.R.A. 1916A 1220], and *Conner* v. *Bank of Bakersfield,* 174 Cal. 400 [163 P. 353], held that a bank was not liable for a drawer's arrest or other damage caused by the bank's wrongful refusal to negotiate the drawer's check. Holdings of that type were disapproved in *Weaver* v. *Bank of America, supra,* 59 Cal.2d 428, 435, and Commercial Code section 4402 is now the applicable law. (See also Sixth Progress Report to the Legislature by Senate Fact Finding Committee on Judiciary (1959-1961) The Uniform Commercial Code, pt. 1, pp. 481-482, quoted in West's Commercial Code Ann., § 4402 at pp. 637-638.) *Guy* v. *Frankin, supra,* 5 Cal. 416, and *Friend & Terry Lbr. Co.* v. *Miller, supra,* 67 Cal. 464, contain dicta that the sum due under a contract plus interest is the maximum amount of damages. However, *Guy* is a pre-code case and *Miller* makes no reference to section 3302.

It is true that *Baumgarten* v. *Alliance Assur. Co.,* 159 F. 275, 277, held that section 3302 prevents an insurance company from being liable for more than the face value of a policy, plus interest from the time the insurer should have paid the claim. *Baumgarten's* interpretation of section 3302 is simply incorrect.

Moreover, even if section 3302 of the Civil Code is a limitation on the recovery of damages under section 3300 of that code, the former section by its own terms is not applicable here. Section 3302 speaks of obligations "to pay money only." In the instant case the fire insurers had the alternatives of either repairing the motel or paying for the loss, and, since the obligation thus was not "to pay money only," section 3302 does not immunize them from liability for consequential damages caused by their alleged breach of contract.

It may be that on the trial plaintiff will not be able to prove that he suffered a loss as the result of the bankruptcy; the

amount of the liabilities discharged by the bankruptcy may exceed the value of assets lost by the bankruptcy. However, plaintiff has expressly alleged that the bankruptcy did cause loss, and such a loss is a detriment which a breaching party contemplated or should have contemplated at the time of entering into the insuring agreements as likely to result from a failure to perform.

I would reverse the judgment of dismissal, direct the trial court to overrule the general demurrer, and to pass on the issues presented by the special demurrers.

Tobriner, J., and Mosk, J., concurred.