Present:  Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Kinser, JJ., and Whiting, Senior Justice

VIRGINIA SCHOOL
OF THE ARTS, INC.
                          OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 962535                    October 31, 1997

ROBERT EICHELBAUM, ET AL.

          FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                    Mosby G. Perrow, III, Judge


     In this case involving charitable giving, the main issue is
whether the terms of a so-called "matching grant" or "challenge
grant" are enforceable when there has been a failure to meet the
conditions of the grant.

     This action evolved from a suit brought by a decedent's
personal representatives seeking aid and guidance in estate
administration.  In November 1994, appellees Robert Eichelbaum
and Lewis B. Goode, Jr., Co-Executors of the Estate of Katherine
Haas Eichelbaum, Deceased, filed a bill of complaint naming as a
defendant, among others, appellant Virginia School of the Arts,
Inc.  Noting that the defendant had presented a claim against the
estate, the executors sought the court's aid and guidance
regarding "the legal enforceability of" the claim.  The school is
a Lynchburg private "residential high school that fosters and
encourages students of middle and high school age to achieve the
highest possible standards in dance, theater, music and visual
arts."

     During the litigation, the cause was transferred to the law
side of the court by agreement.  The other defendants were
dismissed, and the case proceeded as a claim by the school

against the estate seeking to enforce a "charitable subscription of the Decedent" in the amount of $100,000.

Following a June 1996 bench trial, at which only the school presented testimonial evidence along with stipulated documentary evidence, the court below ruled in favor of the estate. We awarded the school an appeal from the September 1996 final order dismissing its claim with prejudice.

The facts are undisputed. Between 1991 and 1993, Mrs. Eichelbaum, a resident of Lynchburg, gave $467,433 to the school. Her benevolence took the form of both outright "special gifts" and contributions to the school's "annual fund drive." For example, during the "spring of '93," her $150,000 special gift enabled the school to avoid closing because of financial difficulties.

The transaction in question took place in October 1993. At that time, the school was involved in soliciting prospective donors for the 1993-94 annual fund for the fiscal year July 1, 1993 to June 30, 1994. Because Mrs. Eichelbaum had been "a major donor of the school," the school's administrators decided to ask her to make a "challenge gift" in order to encourage other persons to contribute to the fund drive.

Helen Burnette Harvey, who managed the school's internal operations, visited Mrs. Eichelbaum armed with fund-raising "materials" and a "request letter" dated October 5, 1993. The letter provided: "A gift of $100,000 as a challenge grant to the

1993-94 Annual Fund would ensure the School's place in this community as both a cultural and economic asset."  The letter further provided:  "With your permission we would like to promote your gift to encourage renewing and new donors to invest . . . We must raise $200,000 during this year's Annual Fund period; we believe a matching grant would make it possible for us to achieve this goal."

Following the visit, Mrs. Eichelbaum consulted her financial adviser and signed a statement dated October 8, 1993 affixed to the end of the letter in which she "agree[d] to commit the sum of $100,000 . . . to The Virginia School of the Arts."

The letter did not mention periodic payments of the "matching grant" or how the pledge would be paid, nor were those subjects discussed with Mrs. Eichelbaum or her financial adviser by any of the school's representatives.

On October 18, 1993, Mrs. Harvey on behalf of the school wrote Mrs. Eichelbaum a letter of appreciation, stating her "recent generous gift . . . in the form of a $100,000 matching grant is exactly what we needed to ensure the success of the '93-'94 Annual Fund drive."  On December 3, 1993, the school issued a press release announcing an anonymous "challenge gift" of $100,000, which "will encourage other individuals, business and industry sources, and private foundations in the community and beyond to contribute to the school's operations and programs." The press statement said the school "must match this challenge

gift by the end of this fiscal year."

The school then attempted to raise funds to match the pledge. In letters to prospects, the school called attention to the "$100,000 challenge gift" and stated it was "striving to meet this generous offering." In letters of appreciation to donors, the school stated that the particular gift "brings us closer to meeting our responsibility in relation to the $100,000 challenge grant that we received from a loyal supporter."

Mrs. Eichelbaum died testate on January 14, 1994. The school had not asked her to make any payments on the pledge and she had made none. Additionally, by that date, the school had not raised $100,000 to equal the decedent's matching grant. By the end of the 1993-94 fiscal year, the school had raised only $67,592.71.

In a letter opinion, the trial court determined that the "subscription considered in context with the solicitation letter of October 5, 1993, and the resulting conduct of the parties, whether analyzed as a unilateral or bilateral contract, is unenforceable" because the school "failed to match the sum pledged by the decedent during the 1993-94 Annual Fund Drive."

On appeal, the school contends the trial court erred in ruling that the estate was not liable for payment of the decedent's pledge. Arguing that "charitable subscriptions should be enforced as a matter of public policy wherever possible," the school says the trial court erred in failing to find it "actually

- 4 -

matched the pledge in this case." The school argues "its evidence unequivocally establishes that the gift was matched within a reasonable time" because it raised $212,000 during the period October 1993 - June 1995 through gifts from persons other than the decedent. The school says "nothing in the pledge provided any limitation to the time within [which] the gift was to be matched by other pledges." This argument ignores the uncontradicted evidence and is contrary to settled law on the subject.

A charitable subscription is governed by the law of contracts and must be supported by an offer, an acceptance, and consideration. Galt v. Swain, 50 Va. (9 Gratt.) 633, 635 (1853). And "a subscription, like any other promise or offer, may be conditional. If particular terms are prescribed, these terms in themselves are conditions which must be complied with before the subscription is binding." Id.

In the present case, there was valuable consideration to support a binding contract between the decedent and the school. The decedent's promise of a "matching" or "challenge" grant was relied on by school officials, who expended effort to solicit matching funds.

But the contract as expressed in the letter of October 5, 1993, and evidenced by the school's subsequent conduct and statements, clearly and unambiguously included a condition, that is, the school was obligated to raise $100,000 during the 1993-94

fiscal year ending June 30, 1994.  This the school failed to do.

The October 5 "request letter" tied the request for a "challenge grant" specifically to the "1993-94 Annual Fund."  The evidence plainly showed that the school operated on a fiscal year basis of July 1, 1993 to June 30, 1994, and that school officials considered the school had the "responsibility" to match the pledge during that period.  The fact that the school raised $212,000 by June 1995 did not satisfy the condition.

Therefore, because the school failed to fulfill the condition, the contract is unenforceable, and the pledge is not binding on the decedent's estate.

The school raises two additional issues.  First, it contends the trial court erred in refusing to apply the doctrine of promissory estoppel to these facts.  We reject this contention. Today, we decide that the doctrine should not be adopted in Virginia.  W. J. Schafer Assoc., Inc. v. Cordant, Inc., 254 Va. ___, ___ S.E.2d ___ (1997).

Second, the school contends the trial court "erred in failing to rule on the admissibility of" an August 1992 letter from Mrs. Eichelbaum to her financial adviser, who was one of the executors, directing payment of "all signed commitments, in the form of a pledge, to charitable organizations."  There is no merit to this contention.  The recitals in the court's opinion letter and final order implicitly show that the court, sitting without a jury, considered the letter.

Accordingly, we hold there is no error in the judgment from which this appeal is taken, and it will be

__Affirmed__.
