# CIRCUIT COURT OF THE CITY OF NORFOLK

Eastern Virginia
Medical School

v.

Foundation for the
Howard and Georgeanna Jones
Institute for Reproductive Medicine

January 23, 2006

Case No. (Law) CL05-41

BY JUDGE JOSEPH A. LEAFE

This matter comes before the Court on Eastern Virginia Medical School's Motion for Declaratory Judgment. The Court heard evidence from the parties on November 16-17, 2005, and arguments on January 5, 2006. Both parties submitted trial and post-trial briefs, which the Court considered along with the evidence and testimony before making the following rulings.

*I. Background*

Eastern Virginia Medical School, the plaintiff in this action, is a public education institution located in Norfolk, Virginia. *See* Va. Code Ann. § 23-14 (2005). The defendant, the Jones Institute Foundation, is an independent non-profit corporation created to support the Jones Institute for Reproductive Medicine, a division of the Obstetrics and Gynecology Department of EVMS. Essentially, this lawsuit revolves around royalties EVMS received from an oral contraceptive developed by a Jones Institute professor, Dr. Gary Hodgen.

In the early 1990s, Dr. Hodgen and Dr. Edward E. Brickell, then President of EVMS, discussed altering the distribution of proceeds from technology developed by Jones Institute researchers. Dr. Hodgen sought to ensure that profits from Jones Institute inventions would be used to advance the work of the Jones Institute. Trans. 196-97. The school's existing patent policy directed that funds derived from EVMS technology should be shared equally among the inventor, the inventor's primary department, and EVMS.

On June 28, 2000, Dr. Brickell and two other EVMS officials drafted a "Letter of Agreement" that changed the patent policy with regard to inventions coming out of the Jones Institute. The Letter directs that the proceeds from inventions created by the Jones Institute staff should be divided so that the inventor would receive one-third and the remaining two-thirds would be split evenly among the Department of Obstetrics and Gynecology, the Jones Institute Foundation, and EVMS. This arrangement would last until the Jones Institute Foundation received ten million dollars. After that point, the inventor would continue to take one-third, but EVMS would receive one-third, the Obstetrics and Gynecology Department would take seventy-five percent of the remaining funds, and the Jones Institute Foundation would take the final twenty-five percent. That arrangement would remain in place until the Jones Institute Foundation received twenty million dollars, at which time the profits would be equally distributed among the inventor, EVMS, and the Obstetrics and Gynecology Department. Both the general patent policy and the Letter of Agreement provide for the recovery of EVMS costs before making any distributions.

The Letter of Agreement bears the signatures of Dr. Brickell, David Thiel, Vice President of EVMS, and Dr. William Gibbons, Chair of the Obstetrics and Gynecology Department. Dr. Brickell retired two days later on June 30, 2000, when Dr. Sumner Bell assumed the EVMS presidency. The Letter of Agreement lay dormant for several years, presumably because EVMS had not yet realized any profits from Dr. Hodgen's oral contraceptive, trademarked as "Seasonale."

In spring of 2004, however, the Letter led to the present dispute between EVMS and the Jones Institute Foundation. At that time, the Food and Drug Administration had approved the new contraceptive pill, and both parties anticipated that Barr Laboratories would exercise its option to license Seasonale. Trans. 73. The Jones Institute Foundation requested an accounting of expenses from EVMS in order to calculate its expected take of the proceeds under the Letter of Agreement. *Id.* In September 2004, Barr purchased the exclusive rights to the Seasonale patent from EVMS for nineteen million dollars.

EVMS asserted that the Letter of Agreement was beyond the scope of the school's authority as a public institution and Dr. Brickell's powers as President. In August 2004, EVMS counsel informed the Jones Institute Foundation that the Letter was unenforceable. Trans. 121. Despite their attempted negotiations, the parties failed to agree on a distribution of the proceeds in light of the Letter of Agreement.

In January 2005, EVMS filed this Motion for Declaratory Judgment requesting that the Court declare the Letter of Agreement void or that any transfer of patent proceeds by EVMS to the Jones Institute Foundation would exceed the powers granted to EVMS by Virginia law or the school's charter. In the alternative, EVMS requested that the Court clarify the rights and obligations of the parties under the EVMS Patent Policy and the Letter of Agreement. The Jones Institute Foundation counterclaimed for its share of royalties under the Letter of Agreement, no less than three million dollars.

In September 2005, this Court bifurcated the issues of liability and damages. The hearings to date have focused on the legal effect of the Letter of Agreement and the existence of an oral contract between EVMS and the Jones Institute Foundation.

## II. Discussion

### A. Authority to Enter Agreement

Eastern Virginia Medical School possesses the authority to distribute technology proceeds to the Jones Institute Foundation. In the EVMS Enabling Act, the Virginia General Assembly gave EVMS the powers necessary to carry out the school's purposes, which include "providing educational opportunities and conducting and facilitating research." 2002 Va. Acts, ch. 87, 478, § 3. Specifically, the EVMS Enabling Act grants the medical school the authority to "make loans and provide other assistance to corporations, partnerships, associations, joint ventures, or other entities" and to "make contracts or guarantees [and] incur liabilities." See 2002 Va. Acts, ch. 87, 478, § 8.1(g), (h). The broad language of the Enabling Act covers EVMS's decision to distribute a portion of its technology proceeds to benefit the Jones Institute Foundation, which in turn supports the Jones Institute for Reproductive Medicine at EVMS.

Furthermore, EVMS delegated this authority to the President in the organization's Bylaws. The Bylaws give the President power to direct the operations and policies of the medical school using his or her own best judgment:

> The President shall exercise supervision and control over all operations of the organization, including but not limited to the following: to operate and conduct the affairs of the organization according to the Enabling Act, these Bylaws, Orders, and Resolutions of the Board of Visitors, and *according to his/her own discretion* whenever and wherever it is *not expressly limited* by such Enabling Act, these Bylaws, Orders, and Resolutions.

See EVMS Bylaws, Art. V, § 1.1(a) (emphasis added).

Other provisions in this same section grant the President the power to "amend the plans developed to achieve the EVMS objectives and mission" and to "establish operating objectives and implementing policies in all matters. . . ." *Id.* at Art. V, § 1.1(b), (c). The President possesses the authority to change the patent policy because that power lies within the discretionary powers of his office and is not expressly circumscribed by the Enabling Act, Bylaws, or Orders of Resolutions of the Board of Visitors.

Additionally, it is worth noting that, while the Jones Institute Foundation is an independent corporation, the Foundation is not a stranger to EVMS. The Jones Institute Foundation was created solely to support the Jones Institute for Reproductive Medicine. The Foundation's Bylaws require that its programs comply with the policies and goals of EVMS. 2003 Restated and Amended Bylaws of the Jones Institute Foundation, Art. 1, § 11(f). By directing a portion of the school's technology proceeds to the Jones Institute Foundation, Dr. Brickell acted within the scope of his presidential authority and in keeping with the medical school's general mission to promote medical research.

## B. Legal Effect of the Letter of Agreement

Although Dr. Brickell had the authority to alter the EVMS patent policy, the Letter of Agreement does not signify a contract between the Jones Institute Foundation and EVMS. Neither is it evidence of an enforceable oral agreement between the parties, as suggested by the Jones Institute Foundation. The arrangement between EVMS and the Jones Institute Foundation lacks consideration, a basic element of contract formation. *See GHHS-Richmond, Inc. v. Imperial Assoc.*, 253 Va. 98, 101, 480 S.E.2d 482, 484 (1997), *quoting Sager v. Basham*, 241 Va. 227, 229-30, 401 S.E.2d 676, 677 (1991)). Enforceable contracts must be supported by consideration, the price paid in exchange for the underlying promise of the contract. *Id. See also Virginia School of the Arts, Inc. v. Eichelbaum*, 254 Va. 373, 377, 493 S.E.2d 510, 512 (1997) ("A charitable subscription is governed by the law of contracts and must be supported by an

offer, an acceptance, and consideration."). Even a slight advantage to the party making the promise or a small detriment to the promisee will support a contract. *Id.*

There is no consideration supporting EVMS's decision to alter its patent policy to benefit the Jones Institute Foundation. Dr. Hodgen had already signed an employment contract with EVMS and the Jones Institute when the Letter of Agreement was drafted. The Jones Institute Foundation did not relinquish any rights in exchange for receiving a portion of the patent royalties from Jones Institute inventions. Although the Jones Institute Foundation changed its fund-raising strategy in reliance on the Letter of Agreement, the Foundation's subsequent actions are not the type of bargained-for consideration necessary to support a contract.

Because the Letter of Agreement fails as a contract, EVMS is not bound by its terms until the Foundation receives twenty million dollars in patent proceeds. The EVMS Board of Visitors or President may adopt a new policy in the future to govern the distribution of proceeds from Jones Institute inventions or choose to reinstate the original patent policy.

However, any changes EVMS makes to the policy contained in the Letter of Agreement will apply prospectively. The Jones Institute Foundation is entitled to the share of Jones Institute invention royalties calculated in the Letter of Agreement for the proceeds EVMS received after June 28, 2000. EVMS is bound to follow its own policies, and the technology funds have essentially vested in the Jones Institute Foundation under the amended patent policy as reflected in the Letter of Agreement.

### III. Conclusion

The Court finds that EVMS and the EVMS President possessed the authority to distribute technology proceeds to the Jones Institute. However, the Letter of Agreement awarding the Jones Institute Foundation a portion of the Jones Institute patent proceeds is not a contract, and EVMS is not bound to follow its terms until the Foundation receives twenty million dollars. Going forward, EVMS and its President retain the power to change the patent policy with regard to the Jones Institute Foundation. Until that time, though, the modified policy will stay in effect and EVMS must distribute the Jones Institute invention funds, including the Seasonale proceeds, according to the Letter's terms.