# CIRCUIT COURT OF THE CITY OF NORFOLK

R.T.O., Inc., et al.

v.

Santa Barbara Bank
and Trust, N.A., et al.

November 20, 2012

Case No. (Civil) CL 12-0437

BY JUDGE CHARLES E. POSTON

This action is before the Court upon the Defendants' demurrer to the complaint exhibited against them. Having considered the written submissions of counsel, the papers filed in this action, and counsels' oral arguments, the court will sustain the demurrer as to Count II: Promissory Estoppel and overrule it as to Count I: Breach of Contract and Count III: Fraud and Concealment.

## *Restatement of Facts*

The facts are recounted here in the light most favorable to the Plaintiffs. The Plaintiffs are R.T.O., Inc., R.T.O. Tax System, L.L.C., and Taxcelerator, L.L.C. R.T.O., Inc., provides tax preparation and electronic filing services directly to consumers at its own stores. R.T.O. Tax System is a tax business management and consulting company that provides guidance and support to clients that are or want to be engaged in a tax preparation service similar to R.T.O., Inc. Taxcelerator is a business that prepares tax returns for R.T.O., Inc., which R.T.O., Inc., prints for the taxpayer to sign. The same principles own all three Plaintiffs.

The Defendants are Santa Barbara Bank & Trust (SBBT) and Santa Barbara Tax Products Group, L.L.C. (SBTPG). SBBT is in the banking industry and provides tax refund related services. In January 2010, SBBT's e-filing tax products division was sold to SBTPG, which is the successor-in-interest to SBBT's e-filing tax products division.

In 2008 and 2009, the Plaintiffs were partnered with Republic Bank, which assisted them with their tax preparation service. In 2009, Plaintiffs

began looking for new products to enhance their service to their clients. During their search, Plaintiffs discovered a program known as CrossLink Multi-Site Online (MSO), which Plaintiffs believed was the only 100% web-based professional tax preparation solution for multi-site deployments. In order to provide services through MSO, Plaintiffs would be forced to switch banks because SBBT was the exclusive provider of bank products and services for tax filers using MSO.

The primary reason a tax return service is required to partner with a bank is to provide the service's clients expedited access to funds based upon their anticipated tax refund. The two products at issue in this case are Refund Transfers and Refund Anticipated Loans (RALs). A Refund Transfer is a bank product that allows the tax preparation service to issue a bank check to the taxpayer after the IRS deposits the tax refund into a bank account established solely for this purpose. When using a Refund Transfer, customers will not receive the refund payment for at least a week. With RALs, the tax preparation service (in this case, the Plaintiffs) can provide a loan to a customer who applies to and is approved by the bank. The customer will normally receive his or her funds within twenty-four hours. The Plaintiffs allege that, "because most taxpayers who use Plaintiffs' services want access to funds based on their anticipated refunds as quickly as possible, the ability to offer RALs was critical to Plaintiffs' business." Complaint at ¶ 32, *R.T.O., Inc. v. Santa Barbara Bank & Trust, N.A.*, No. CL12-437 (Va. Cir. Jan. 20, 2012).

Through a series of emails as early as October 15, 2009, SBBT advised the Plaintiffs that SBBT would approve all of the Plaintiffs' offices for RALs and RTs, even though this was not the general policy of SBBT for new customers. Plaintiffs allege that, by October 28, 2009, they reasonably believed that they had reached an agreement for SBBT to provide both RALs and RTs for all of the Plaintiffs' locations. Plaintiffs also began to receive materials that confirmed this belief, such as check stock from SBBT, which constituted a bank product under the Financial Services Agreement (FSA).

The FSA is the foundational contract between SBBT and the Plaintiffs, and it contains several provisions that are relevant to this case. First, the "FSA provides that the agreement is exclusive and precludes the Plaintiffs from submitting applications for RALs or Refund Transfers 'to any entity other than SBBT'." *Id.* at ¶ 50. Therefore, SBBT was the sole party with whom Plaintiffs were contractually allowed to do business under the terms of the contract. Plaintiffs would not have been able to contract with a secondary bank as a form of "insurance" in case SBBT was unable to offer RALs or Refund Transfers. Second, the FSA contains a California choice-of-law clause requiring all causes of action that arise from the contract to be governed by California law rather than Virginia law.

The conflict between the parties began on December 24, 2009, when the Office of the Comptroller of the Currency notified Pacific Capital Bank,

N.A. (the parent company of SBBT) that it would not receive regulatory approval to originate any RALs during the 2010 season. Plaintiffs were not made aware of this lack of regulatory approval until an email dated January 13, 2010, only two days before the start of the tax season; therefore, the Plaintiffs had no time to make alternative arrangements with another bank. In fact, emails dating December 26, 2009, December 28, 2009, December 30, 2009, January 6, 2010, and January 8, 2010, informed the Plaintiffs that, although SBBT would be selling its e-filing division to SBTPG, the Plaintiffs had been approved for RALs and there was no anticipation of any interruption of service. Despite knowing for three weeks that SBTPG would be unable to offer RALs for the 2010 tax season to the Plaintiff, SBBT and SBTPG continued to make misleading representations.

### Count I: Breach of Contract

Because of the choice-of-law provision in the FSA, California law will apply to the breach of contract claim. In order to survive a demurrer under California law, a Plaintiff must plead (1) the existence of a contract, (2) Plaintiff's performance or excuse for nonperformance, (3) Defendant's breach, and (4) the resulting damages to the Plaintiff caused by that breach. *See Reichert v. General Ins. Co. of Am.*, 442 P.2d 377, 381 (Cal. 1968). The Plaintiffs in this complaint adequately pleaded all four elements of a breach of contract cause of action. The Plaintiffs allege that the Plaintiffs and SBBT entered into a valid contract in the form of the FSA. As previously noted, SBTPG was the successor-in-interest to SBBT, so the FSA would apply to SBTPG as well. The Plaintiffs further allege that they fulfilled all of their obligations under the FSA and that SBBT and SBTPG breached their obligations under the FSA. Plaintiffs allege not only that SBBT and SBTPG breached the express terms of the contract, but also that the Defendants breached their implied obligations of good faith and fair dealing. Finally, the Plaintiffs allege that they have suffered, and continue to suffer, damages as a direct, proximate, and foreseeable result of SBBT's and SBTPG's breach of the FSA. Therefore, the demurrer as to the breach of contract claim will be overruled because the cause of action was sufficiently pleaded.

### Count II: Promissory Estoppel

The Defendant's demurrer to Count II of the complaint will be sustained. The Commonwealth of Virginia does not recognize the claim of promissory estoppel among its equitable claims. *Mongold v. Woods*, 278 Va. 196, 202-03, 677 S.E.2d 288, 292 (2009). Also, for the reasons discussed below, Virginia does not allow the application of a choice-of-law provision to a claim of promissory estoppel.

The sole Virginia case that mentions a choice-of-law provision's relationship to promissory estoppel is *Ward's Equip., Inc. v. New Holland N. Am.*, 254 Va. 379 (1997). It is apparent from a reading of *Ward's* that a choice-of-law provision does not apply to a promissory estoppel action.

First, *Ward's* states that Virginia law, rather than the Michigan choice-of-law provision in the contract, would apply to a claim of fraud because fraud is a tort. *Id.* at 385. If a choice-of-law provision does not apply to tort law, a field of law not governed by a contract, then a choice-of-law provision should not apply to a claim of promissory estoppel, a cause of action also not governed by a contract.

Second, *Ward's* states that there is a clear policy against promissory estoppel in Virginia. "The court has not recognized the doctrine [of promissory estoppel], and today we decide it should not be adopted by the Commonwealth." *Id.* (quoting *W.J. Schafer Assoc., Inc. v. Cordant, Inc.*, 254 Va. 514 (1997)). Virginia courts have made it clear that promissory estoppel is not a recognized cause of action in the Commonwealth. Virginia's interest in not recognizing promissory estoppel disfavors applying a choice-of-law provision to allow a claim of promissory estoppel. This interest in preventing promissory estoppel from becoming a cause of action in Virginia is clear in the following cases: *W.J. Schafer Associates v. Cordant, Inc.*, 254 Va. 514, 521, 493 S.E.2d 512, 516 (1997); *Virginia School of the Arts v. Eichelbaum*, 254 Va. 373, 377, 493 S.E.2d 510, 512 (1997); *Mongold v. Woods*, 278 Va. 196, 202-03, 677 S.E.2d 288, 292 (2009).

Third, when the court in *Ward's* discusses the application of Michigan law, it is specifically discussing the application of Michigan law to the Dealer Agreement and the contractual duties that arise from the Dealer Agreement. That agreement would not control which state's laws apply to a promissory estoppel cause of action. A claim of promissory estoppel does not arise from and is not related to the Dealer Agreement. "The relevance of Michigan law was debated during argument of counsel and the [trial] court plainly stated in the judgment order that the 'clear and unambiguous terms of the *Dealer Agreement* gave full authority to [the manufacturer], under either Virginia or Michigan law, to do the acts which Plaintiffs complain of in their Bill of Complaint'." *Ward's*, 254 Va. at 385 (1997) (emphasis added). The Dealer Agreement's choice-of-law provision does not control anything except the contractual claims specifically set forth in the Dealer Agreement. Promissory estoppel is an extra-contractual claim, regardless of whether the elements are similar to that of a contractual claim.

Finally, in *Ward's*, neither state's law was specifically chosen over the other. The court held that both Michigan and Virginia law would lead to the same judgment on the Plaintiff's claims; therefore, it did not matter to the court which law was chosen. Since the law of promissory estoppel is not recognized in Virginia but is an accepted cause of action in Michigan, it does not seem logical to conclude that the court could have been considering

promissory estoppel when it stated that each state's laws would lead to the same outcome.

Other state and federal courts have held that "the promissory estoppel claim, which is in substance a doctrine allowing promises to be enforced despite lack of consideration, is so closely related to [a] contract . . . that the choice-of-law provision would control." Plaintiffs' Brief in Opposition to Defendants' Demurrer at 8-9, No. CL12-437 (Va. Cir. Sept. 14, 2012) (citing *Stoneyfield Farm, Inc. v. Agropharma, Inc.*, 2009 WL 3255218 *5-6 (D. N.H. Oct. 7, 2009)); *see also Trent Partners & Assocs. v. Digital Equipment Corp.*, 120 F. Supp. 2d 84, 95-96 (D. Mass. 1999); *N.H. Speedway, Inc. v. Motor Racing Network, Inc.*, 2011 N.H. Super. LEXIS 43, 3-4 (2011); *Fletcher v. Electronic Data Systems*, 2003 U.S. Dist. LEXIS 13523, *15 (E.D. Mich. July 8, 2003); *Nadler v. Merlin International, Inc.*, 2007 U.S. Dist. LEXIS 19651, *4 (S.D. Ill. March 20, 2007). The issue in using case law from these jurisdictions is that almost all of them recognize promissory estoppel as a valid cause of action; therefore, these states are not concerned with the application of another state's promissory estoppel principles through a contractual choice-of-law provision (since the promissory estoppel principles in other states are generally the same or very similar to each other). Virginia does not recognize promissory estoppel as a cause of action and thus has a strong interest in restricting the use of promissory estoppel claims in its legal system. Therefore, the choice-of-law provision will not apply to a claim of promissory estoppel.

## Count III: Fraud and Concealment

The Plaintiffs pleaded their claim of fraud with adequate specificity. Virginia law, not California law, applies to the claim of fraud because it is an extra-contractual claim that arises from tort law. Under Virginia law, "one who advances a cause of action for actual fraud bears the burden of proving by clear and convincing evidence (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994) (citing *Bryant v. Peckinpaugh*, 241 Va. 172, 175, 400 S.E.2d 201, 203 (1991); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984)). In their complaint, the Plaintiffs adequately allege with sufficient specificity all six elements of a fraud cause of action: the defendants falsely represented to the Plaintiffs that RALs would be available during the 2010 tax season; the Defendants' misrepresentations were of a material fact because RALs are an important aspect of a successful tax preparation business; and the Defendants knowingly and intentionally concealed material facts related to the Defendants' abilities to provide RALs for the 2010 tax season. The Plaintiffs further allege that the Defendants intended to mislead the Plaintiffs with their statements and that

there was reliance on the misleading statements by the Plaintiffs. Finally, the Plaintiffs allege that the reliance on the misleading statements resulted in damage to the Plaintiffs.

### Conclusion

As to Count I: Breach of Contract and Court III: Fraud and Concealment, the demurrer will be overruled. With respect to Count II: Promissory Estoppel, the demurrer is sustained, and that count is dismissed.